ISRAEL P. RUMSEY *et als. vs.* NICHOLAS L. BERRY.

Penobscot, 1874.—July 1, 1876.

*Contract.*

A contract for the sale and purchase of wheat to be delivered in good faith at a future time is not void as a "wagering contract," but when under such an agreement it is understood by the parties that no wheat is to be delivered but only a payment at the time appointed of the difference between the contract and the market price, it thus becomes a wagering contract and the law will not enforce it.

The plaintiffs in good faith at the request and for the benefit of the defendant made an agreement for the sale of wheat to be delivered within a certain time at the option of the defendant, he to furnish sufficient "margin" to secure them against loss. The defendant failed to comply with his part of the contract, and a loss ensued. *Held,* that under such a contract the law will give to the plaintiffs a remedy for their loss.

ON EXCEPTIONS.

ASSUMPSIT. The writ was dated August 4, 1872, and contained a count upon an account annexed, and one for money paid, laid out and expended. The action was brought to recover a balance alleged to be due from the defendant to the plaintiffs under the following facts admitted or proved at the trial.

The defendant, a resident of Bangor, Maine, was in Chicago, Illinois, and there met the plaintiffs who are and were in 1872,

when the transactions took place, commission merchants, brokers, and members of the board of trade in Chicago, and authorized the plaintiffs either personally or by his agent, April 22, 1872, to sell for him, 10,000 bushels of wheat at $1.30 and $1.31 per bushel, to be delivered at any time he (Berry) pleased during the month of May following. The plaintiffs thereupon did, in their own name according to said orders, contract to deliver said wheat to third parties. By custom and law at Chicago, so long as the defendant furnished to the plaintiffs sufficient "margin" so called, to secure them against loss in the event of a rise in the price of wheat, the plaintiffs must carry said contract along open under the directions of the defendant, until the last day of May; but if upon demand for additional margins upon the rise in the price of wheat, said "margins" were not furnished within a reasonable time, then the plaintiffs had a right at any time to purchase in wheat at the market price, to fill said contract, or to settle on the best terms possible with the parties to whom they had contracted to deliver the wheat, and claim of the defendant reimbursement for any loss incurred. Soon after April 22d, wheat commenced to rise in price, and upon demand, the defendant furnished $700 as a "margin," but wheat continued to advance in price, and upon demand for further "margin," the defendant failed to furnish it, and the contract was canceled by the plaintiffs with the parties with whom they had contracted to deliver in one or the other of the months above described, at a loss of about $3000, only $700, of which was covered by the margin deposited; and this suit was to recover the difference, and the verdict of the jury was the full amount claimed. The defendant testified at the trial, that at the time the plaintiffs and the defendant entered into this contract, the defendant had no wheat, and that the plaintiffs knew it; but it was proved at the trial and admitted by the defendant, that in pursuance of the agreement of the plaintiffs to sell wheat for the defendant, that the plaintiffs did contract with certain persons in Chicago, and become personally responsible to deliver them 5000 bushels of wheat at $1.31, and 5000 bushels at $1.30 per bushel, on some day in May, at seller's option, and that they did either actually deliver the wheat or make

satisfactory settlement with the parties, at a loss of about $3000; hence the defendant claimed at the trial, and his counsel asked the presiding judge to instruct the jury, that said contract was merely betting upon the price of wheat during the balance of the month of April, and the month of May, and therefore a "wagering contract," and therefore illegal and invalid, as a foundation of the action. This instruction the presiding justice refused to give, but did instruct the jury that such a contract would be valid under the laws of this state, and, in the absence of proof to the contrary, would be presumed to be valid under the laws of Illinois, where the contract was made.

The verdict was for the plaintiffs for $2,305.62.

The defendant alleged exceptions.

*J. F. Godfrey*, for the plaintiffs.

*F. A. Wilson & C. F. Woodard*, for the defendant.

DANFORTH, J. The plaintiffs are and were in 1872, brokers, commission merchants and members of the board of trade in Chicago, and, at the request and for the benefit of the defendant, a resident of Bangor, contracted with third parties for the sale of a quantity of wheat.

This contract was entered into upon the 22d day of April, 1872, and the delivery was to be at the option of the defendant, at any time during the month of May following. The plaintiffs were personally responsible for the performance of this agreement, and the defendant was on his part under obligation to furnish sufficient "margin" to secure against loss in case of a rise in wheat. This he failed to do, a considerable loss followed and this action was commenced to recover the amount of it.

The liability of the defendant by the terms of the contract is not denied, but the presiding justice was requested "to instruct the jury, that said contract was merely betting upon the price of wheat during the balance of the month of April, and the month of May, and therefore a 'wagering contract' and therefore illegal and invalid, as a foundation of the action." This instruction was refused and the jury were instructed that the contract was valid under the laws of this state and in the absence of proof to the

contrary would be presumed to be valid under the laws of Illinois, where it was made.

No question is here raised as to whether any fact in relation to the nature of the contract and proper for the consideration of the jury was taken from them. The request was not for instructions as to the nature and effect of a wagering contract, but that as a matter of law this was such. As the agreement was not in writing it might have been proper for the presiding justice, had he been so requested, to have defined a wagering contract and have left it to the jury to find whether by a fair inference from all the testimony this was within the definition. But virtually the request was that the court should decide the question as a matter of law. This was done, and nothing is now presented but simply to ascertain whether the case shows any error in that decision.

Such error we fail to discover. The testimony so far as reported reveals nothing inconsistent with an ordinary sale of an article to be delivered in the future. While it may indeed appear a little singular and even suspicious that a man residing in Bangor, having no wheat of his own, should undertake to sell and deliver wheat in Chicago; still we cannot assume that any one has violated the law and been guilty of immoral and corrupting practices in his business transactions, without proof, even though he may ask it himself, for the purpose of being relieved from the obligation of a losing contract.

Besides we utterly fail to discover any wrong on the part of the plaintiffs. Their business was a legitimate one, and so far as appears, their connection with this transaction honest. Their profits were not to be affected by the result, their commissions were not to be increased or diminished by any contingency. It is true they were aware that the defendant at the time had no wheat. But the fact itself being immaterial, their knowledge of it is equally so. It is not only common but perfectly legal and sometimes necessary to contract for the sale and future delivery of an article which at the time has no existence, but which is afterwards to be purchased, raised or manufactured.

It does not appear that the defendant had any intention beyond what appears upon the face of the contract, or if he had that the

plaintiffs were cognizant of it. The mischief and illegality arises when the apparent contract is not the real one, when it is a mere cover for ulterior designs and such as are not authorized by law. A contract for the sale and purchase of wheat to be delivered in good faith at a future time is one thing, and is not inconsistent with the law. But such a contract entered into without an intention of having any wheat pass from one party to the other, but with an understanding that at the appointed time the purchaser is merely to receive or pay the difference between the contract and the market price, is another thing, and such as the law will not sustain. This is what is called a settling of the differences, and as such is clearly and only a betting upon the price of wheat, against public policy, and not only void, but deserving of the severest censure. This distinction is recognized in the *case of Chandler*, reported in The American Law Register, for May, 1874, and the Chicago Legal News of April 11, 1874, relied upon by the defendant. That case both in the reasoning and conclusion reached, has our entire approbation, and were the facts in the case at bar the same as developed in that we should not hesitate to apply the same principles of law.

The result is, that whatever might be the conclusion properly reached from the facts applicable to the defendant alone, the case fails to show on the part of the plaintiffs any complicity with a wagering or illegal contract.            *Exceptions overruled.*

APPLETON, C. J., WALTON and VIRGIN, JJ., concurred.

PETERS, J., did not sit.

BARROWS, J., delivered the following dissenting opinion:

I cannot help thinking that the opinion fails to apply the sound legal doctrine, which it affirms, to the facts and rulings in the case. The case finds that the plaintiffs knew that the defendant, a citizen of Bangor, had no wheat to sell, but at his request bound themselves by contract, for him, to deliver 10,000 bushels during the next month at the seller's option, at a certain price; that defendant furnished plaintiffs with $700 as a "margin," but failing, though requested, to make further advances, as the price of wheat rose, they in accordance with the custom in Chicago, can-

celed the contracts at a loss of about $3000, and brought this action to recover the difference between that sum and the $700 margin deposited.

If there was not enough in this to justify the defendant's request that the presiding judge would rule as matter of law that this was a wagering contract, and illegal and void, still it seems to me very clear that its character was so suspicious that it ought to have been left to the jury, under proper instructions, to say what the true intent of the parties was. Instead of doing this, the presiding judge cut off the defense by a peremptory ruling that under such circumstances the contract would be valid.

It is futile and evasive to argue that this ruling was justified, because, upon its face, the contract was a lawful one for the delivery of wheat at a future day. If it were designed and understood to be a mere gambling transaction, its terms would still be the same.

The real question was, whether it was the intent and expectation of these parties that the wheat should be delivered, or whether it was, that in case of a rise, a settlement was to be made upon such terms as they could get, and in case of a fall they were to receive the difference from the parties with whom the contract was made.

Nor do I think it can be rightly said that "no question is here raised as to whether any fact in relation to the nature of the contract, and proper for the consideration of the jury was taken from them."

The defendant excepted to the instruction given, as well as to the refusal to instruct. I think his exceptions should be sustained. I do not understand that the party who knowingly furnishes one with money to be used at the gambling board is any more entitled to the aid of the court to recover it, than the winning gambler would be to enforce the wager.

DICKERSON, J., concurred in this dissenting opinion.

CUTTING, J., was "inclined to concur in this."