HENRY B. GREGORY AND ARTHUR A. MCHARDY v. JOHN H. WENDELL AND HENRY O. CLARK.

*Usage—Judicial notice—Dealing in options—Sales for future delivery—Recovery of "margins."*

Courts must recognize present methods of doing business, and under established common law principles enforce new classes of agreements arising from them if not against public policy.

Dealers can sell and agree to deliver in the future, goods which they have not at the time but expect to buy.

Vendor and purchaser can agree for future symbolical delivery, as by tender of warehouse receipts; and before the time for delivery the vendee can transfer his right to a third person who would be entitled to possession at the time specified.

An agreement for a sale for future delivery is a gambling contract and as such not enforceable where the intention is that there shall be no actual sale but only that at the time fixed for delivery the parties shall settle, and the purchaser pay or receive the difference between the agreed price and the market price at that time according as the market price is less or greater.

It is for the jury to determine, in cases of uncertainty, whether a contract for future delivery is in good faith for an actual sale, or is merely a gambling contract.

A payment of "margins" cannot be recovered back in case of a decrease in the price of the goods, where both vendor and purchaser contemplated a merely gambling contract; nor can they be recovered to the extent of the loss, where both intended an actual sale; but if the purchaser alone acted in good faith while the vendor received the margins without obtaining the goods for delivery, the purchaser can repudiate the contract and recover back the money advanced for the investment.

Error to Superior Court of Detroit.    Submitted June 21.    Decided October 15.

ASSUMPSIT.    Plaintiffs bring error.

*Atkinson & Atkinson* for plaintiffs in error.

*Otto Kirchner* and *Ashley Pond* for defendants in error, cited as to the legality of "option deals" *Clark v. Foss*, 10 Chic. L. News, 211; *Wolcott v. Heath*, 78 Ill., 433.

MARSTON, J.   Plaintiffs reside in Owosso, and in 1877 were engaged in the purchase of grain and other farm products.   Defendants were commission merchants in the city of Detroit.

On the 26th of April, 1877, one of the plaintiffs had a conversation with one of the defendants in the city of Detroit about speculating in corn and wheat.   It resulted in plaintiffs directing defendants to purchase for them 20,000 bushels of corn, deliverable at Chicago in June following.   It was claimed that defendants thereupon telegraphed to certain commission merchants in Chicago directing the purchase, and received a few minutes thereafter a telegram announcing the purchase of the quantity mentioned and at prices therein named.   It was at this time agreed that plaintiffs should send defendants $1000 as a margin upon this purchase, which was done within a few days thereafter.   The receipt thereof was acknowledged by defendants and credited to plaintiff's account.

Other correspondence was had between these parties in reference to this purchase and the condition of the grain markets.

On May 17th plaintiffs wrote defendants suggesting a change from June to July corn, and on the 18th defendants wrote plaintiffs that they had sold the June corn and purchased July corn, and enclosed a statement of account showing a loss to plaintiffs.   The receipt of this letter by plaintiffs was on the next day, and a hope expressed that the loss sustained on the June would be got back on the July corn.   The market continued to decline.   Farther margins were called for but not made. Two car loads of wheat were shipped by plaintiffs to defendants, and by them sold on commission and the proceeds credited to plaintiffs on account.

Action was brought to recover the amount received for this wheat and to recover back the $1000 margin. There was no dispute as to the wheat or its value, and judgment was recovered for the amount thereof.   The

court charged the jury that no part of the $1000 could be recovered. In this it is claimed the court erred, and also in not submitting the question to the jury whether any corn was ever actually purchased.

Gregory, one of the plaintiffs, testified that he never saw any of the corn and that none had ever been delivered to him.

He also testified that in July certain parties called at his office; that they had an envelope, the contents of which he declined to examine, and there was evidence tending to show that they were there and offered to make him a tender of warehouse receipts for July corn. There was evidence tending to show that before the commencement of this action defendants were called upon, in the plaintiff's interest, and requested to produce and show the telegrams in reference to the purchase of the June corn, but that although search was made, they were unable to find them, although such were produced on the trial. A Mr. Thomas, a broker on 'change for Cooley & McHenry of Chicago, testified that he purchased twenty thousand bushels of corn on April 26th; that he and the party from whom he purchased made the usual memorandum of the transaction, which was afterwards, in accordance with the custom, reduced to formal entries on their respective books. The original memorandum and entries were not produced, and the witness was unable to give the name of the person from whom he purchased the corn, or where it was at the time, or to whom he afterwards sold it. Other evidence was given which it was claimed tended to show that no actual sale of corn had been made.

It seems to me that the real questions thus raised in the case were,—was there an actual *bona fide* sale of corn intended by the parties or any of them, to be delivered and received? Or did the parties intend that no corn should be purchased, delivered, received, but that a settlement should be made upon a basis of

the market price of corn at the time mentioned for delivery?

Some nice distinctions have heretofore been drawn as to the right of a person to sell personal property not at the time owned by him, but which he intended to go into the market and buy,—or as was said, that which he hath neither actually nor potentially. Courts must however, from necessity, recognize the methods of conducting and carrying on business at the present day, and applying well settled principles of the common law enforce what might be called a new class or kind of agreements, heretofore unknown, unless they violate some rule of public policy. The mercantile business of the present day could no longer be successfully carried on, if merchants and dealers were unable to purchase or sell that which as to them had no actual or potential existence. A dealer has a clear right to sell and agree to deliver at some future time that which he then has not, but expects to go into the market and buy. And it is equally clear that the parties may mutually agree that there need not be a present delivery of the goods, but that such delivery may take place at some other time; and that there need not be an actual manual possession given, but a symbolical one, as by the delivery of warehouse receipts according to custom, is also beyond dispute.

In these cases there is something actual and tangible sold, although not then owned or possessed by the vendor, or rather something actual and tangible agreed to be sold, as the agreement is more in the nature of a contract for a future sale. There is also an intention, and such is the agreement, that when the time agreed upon for delivery arrives, the property shall be actually delivered. This, as already said, may, as in the case of grain, be by a delivery of warehouse receipts, for the quantity and quality agreed upon, rather than for any particular lot. The vendee under such an agreement may, before the time for delivery to him has arrived,

agree to sell, or transfer his right to the goods, or under the contract to some one else, who, should he retain the same, would be entitled to receive possession thereof at the time agreed upon by the parties through whom he claims title.

But where the parties at the time of entering into an agreement for the purchase and sale, apparently, of goods for future delivery, agree that no title to any property shall pass and that nothing shall be delivered, —no delivery made: or where, from the nature of the transaction and the manner and method of carrying on the business, it is apparent that such was the intention of the parties, although not expressed, but the agreement or understanding was that at the time fixed for delivery they should settle, upon a basis of the then market price of the commodity, by the losing party paying to the other the difference, such an agreement would be one that the law would not recognize and enforce. It would not constitute a sale or an agreement to sell property of any kind, but one to speculate upon the prices that certain property would be likely to bring at some future day.

The distinction was clearly pointed out in *Rumsey v. Berry*, 65 Me., 574. The court said: "The mischief and illegality arises when the apparent contract is not the real one, when it is a mere cover for ulterior designs and such as are not authorized by law. A contract for the sale and purchase of wheat to be delivered in good faith at a future time is one thing, and is not inconsistent with the law. But such a contract entered into without an intention of having any wheat pass from one party to the other, but with an understanding that at the appointed time the purchaser is merely to receive or pay the difference between the contract and the market price, is another thing, and such as the law will not sustain. This is what is called a settling of the differences, and as such is clearly and only a betting upon the price of wheat, against public

policy, and not only void, but deserving of the severest censure."

This question was fully discussed by AGNEW, J., who delivered the opinion of the court in *Kirkpatrick v. Bonsall*, 72 Penn. St., 155, where the court held a certain contract was not, on its face, a gambling contract, but that its character might be weighed in connection with other evidence, on the question that the transaction was a gambling scheme.    The court said a bargain for an option may be legitimate and for a proper business object.   "But it is evident such agreements can be readily prostituted to the worst kind of gambling ventures, and therefore its character may be weighed by a jury in connection with other facts in considering whether the bargain was a mere scheme to gamble upon the chance of prices.    The form of the venture when aided by evidence may clearly indicate a purpose to wager upon a rise or fall in the price of oil at a future day, and not to deal in the article as men usually do in that business.    We must not confound gambling, whether it be in corporation stocks or merchandise, with what is commonly termed speculation.    Merchants speculate upon the future prices of that in which they deal, and buy and sell accordingly.    *    *    Their speculations display talent and forecast, but they act upon their conclusions and buy and sell in a *bona fide* way.    Such speculation cannot be denounced.    But when ventures are made upon the turn of prices alone, with no *bona fide* intent to deal in the article, but merely to risk the difference between the rise and fall of the price at a given time, the case is changed.    The purpose then is not to deal in the article, but to stake upon the rise or fall of its price.    No money or capital is invested in the purchase, but so much only is required as will cover the difference— a margin, as it is figuratively termed.    Then the bargain represents not a transfer of property, but a mere stake or wager upon its future price."

See farther *Grizewood v. Blane*, 11 C. B., 526;   73

E. C. L., 526, where it was held that a contract to purchase shares of stock without the intention to deliver or receive them was a gaming contract.

In *Yerkes v. Salomon*, 18 N. Y. Sup. Ct. (11 Hun), 473, it was said that the authorities were abundant upon the proposition that if neither party intended to deliver or accept shares, but merely to pay differences according to the rise or fall of the market, the contract would be a gaming one. And in that case it was held to be error to exclude a question asking what the intention at the time the contracts were made was, whether to tender or call stock, or merely to settle upon differences.

It is clear from these authorities, that the form of the contract on its face, is not conclusive, but that its character should be considered by the jury in the light of all the surrounding facts and circumstances, in order for them to determine whether a mere scheme to gamble upon prices, was the intention, or an actual *bona fide* sale of grain to be delivered at the time mentioned.

There were some suspicious facts and circumstances in this case. The weight thereof, or the proper conclusion to be arrived at from a view of the whole case, it is not for this court to determine. The whole case under proper instructions should have been submitted to the jury and the court erred in withdrawing the case from them. There must therefore be a new trial ordered, upon which the case may appear in one of three different aspects.

*First.* If the parties acted in good faith, and the agreement made contemplated an actual purchase and delivery of grain, and such a purchase was in fact made, then the amount paid by plaintiffs in error to cover any loss which defendants might suffer or become responsible for on account of a decline in the price or value of the grain purchased, cannot, to the extent of such loss be recovered back.

*Second.* If under the agreement made, neither party contemplated or intended, that any grain should in fact be purchased, or delivered, but that at the time mentioned for delivery, the difference between the contract and the market price should be paid to the person entitled to receive the same, such agreement being void as against public policy, and both parties being equally in the wrong, the law would afford no assistance to either, and the amount paid over as a margin could not be recovered back.

*Third.* If plaintiffs in error, acting in entire good faith, authorized defendants to purchase grain for them, to be delivered at a future date, contemplating and intending that an actual purchase of grain, and a delivery thereof to them would be made, but the defendants, without being induced by plaintiff's action into any misunderstanding, did not in fact make or cause to be made an actual *bona fide* purchase of grain, but acted upon the theory that the difference in price only should be accounted for and paid, then and under such circumstances, plaintiffs upon discovery of such facts, would have a right to repudiate what had been done, and recover back the amount by them advanced or paid over to the defendants.

Judgment reversed with costs and a new trial ordered.

The other Justices concurred.