# Hawley *v.* Bibb.

## *Bill in Equity to Foreclose Mortgage.*

1. *Future contracts; when invalid.*—While the sale of goods, to be delivered at a future day, is valid, although the vendor neither has the goods in his possession, nor has contracted for the purchase of them, nor has any expectation of acquiring them except by purchase at some time before the day of delivery; yet, if from the nature of the transaction and the circumstances attending it, whatever may be the form of the contract, it is apparent that the parties did not intend either a purchase or sale, or a delivery of the goods, but that, at the time appointed for delivery, the transaction should be closed upon the basis of the then market price, the losing party paying to the other the difference,—such a transaction is a wager, and is void at common law.

2. *Same; when advances made therefor by broker recoverable.*—In the absence of a statute pronouncing future contracts, which are mere wagers, illegal and void, the general rule is that where a party makes such contracts through a broker, for a commission only, which is payable in any event, whether loss or gain result to the principal, such broker having no interest in the contracts, the principal is bound to reimburse the broker for advances made for him, if he subsequently execute his note or bill therefor, or make an express promise to pay them, or if, with full knowledge of the facts and without objection, he permits the transaction to proceed.

3. *Contracts founded on a gambling consideration void, under the statute.* The statute of this State (Code, § 2131) pronounces all contracts founded, in whole or in part, on a gambling consideration, void; and under its operation, negotiable instruments made upon a gaining consideration, or for a wager, are void, even in the hands of an innocent holder for value.

4. *Contracts founded on a loan or advance of money to bet or stake as a wager; their validity.*—If a party employ a broker to make for him contracts for the future delivery of cotton, and gives to such broker his acceptance of a bill of exchange to be discounted and used in making such contracts; and if at the time it was his purpose, as was known to the broker, neither to actually buy nor sell cotton, nor to receive or deliver it, but simply to stake margins to cover differences in price, and, on final settlement, merely to receive or pay the difference between the contract price and the market price at the time fixed by the contract for delivery,— the consideration of the bill of exchange would represent a loan or advance of money to bet or stake as a wager on the future price of cotton; and if the contract further contemplates that the money is to be advanced and loaned in this State, upon transactions to be made here, the bill of exchange would fall within the interdiction of the statute, and would be void in the hands of an innocent holder for value.

5. *Validity of contract determined by the law of place of performance.*— The force and validity of a contract, made in this State, but in the per-

VOL. LXIX.

[Hawley v. Bibb.]

formance of which all acts and transactions were contemplated and were in fact done and performed in another State, must be determined by the law of that State.

6. *Common law presumed to prevail in New York.*—In absence of proof to the contrary, the common law is presumed to prevail in the State of New York.

7. *Bill of exchange; when bona fide holder not affected by illegal consideration at common law.* At common law, a *bona fide* holder of a bill of exchange, founded on a gambling consideration, which rendered the bill void as between the immediate parties, can not be affected by such illegal consideration.

8. *Bill to foreclose mortgage; what defenses may be made thereto.*— On a bill filed to foreclose a mortgage by the assignee of the debt secured thereby, no other defenses involving the validity of the debt are open, than could be made in an action at law on the debt.

APPEAL from Montgomery Chancery Court.

Heard before Hon. H. AUSTILL.

The bill of exchange secured by the mortgage, for the foreclosure of which this suit was brought, was, at the time it was drawn and accepted by J. Du Bose Bibb, endorsed by E. H. Morrison & Co., the payees, to R. M. Waters & Co., and the mortgage was exeuted directly to them. R. M. Waters & Co. endorsed the bill to the appellant, but did not, by assignment, pass the legal estate in the mortgage to him. When this cause was before this court at the December Term, 1877, on appeal from a decree of foreclosure of the mortgage and sale of the lands conveyed thereby, R. M. Waters & Co. were held to have been indispensable parties to the bill, and the decree of the lower court was reversed and the cause remanded on account of the failure to make them parties. On account of an agreement between the parties, this court, on that appeal, declined to consider the question touching the legality of the contract for the purchase of cotton, set up in the answer.—*Bibb v. Hawley*, 59 Ala. 403.

After this cause was remanded, the complainant amended the bill by making R. M. Waters & Co. parties defendant thereto; and on the hearing, had upon the pleadings and proof, the chancellor held, that the bill of exchange secured by the mortgage was founded on a gambling consideration, and was void. He, therefore, caused a decree to be entered dismissing the bill; and this decree is here assigned as error.

The purpose of the bill and the case made by the record are sufficiently stated in the opinion.

W. A. GUNTER, for appellant.

R. M. WILLIAMSON, *contra*.

BRICKELL, C. J.—The original bill was filed by the appellant to foreclose a mortgage on lands, executed by the appellee,

Bibb, on the 23d day of November, 1872, to secure the payment of a bill of exchange, of which he was the drawer and acceptor, falling due June 1st, 1873, for the payment to E. H. Morrison & Co. of the sum of five thousand three hundred and twenty dollars. The bill was endorsed by the payees to R. M. Waters & Co., by whom, before its maturity, for value, it was endorsed to the appellant. The defense urged by Bibb is, that the only consideration for the bill was money to be advanced to him by the payees, to enable him to engage in the buying and selling of "cotton futures," or in the nominal sale or purchase of cotton for future delivery, the purchaser and seller understanding and agreeing, that at the time appointed for the delivery of the cotton, the cotton was not to be delivered, but that there would be a settlement, and the one or the other would receive or pay the difference between the contract price and the market price at that time.

When the bill was drawn, and the mortgage executed, Morrison & Co. gave Bibb a writing, which is exhibited with his answer, in which the making of the bill, and the execution of the mortgage are recited, and it is stated that the bill had been given to Morrison & Co. for discount for the account of Bibb, and by which they agreed " to purchase for future delivery one thousand bales of cotton, as he [Bibb] may direct, in the city of New York, and keep up his margin on the same as may be required, until said first day of June next, or purchase for him said cotton for any months between now and said first day of June next, keeping up his margins on the same. And said Bibb agrees to make good to us at settlement any amount it may be necessary for us to deposit for his account as loss on the purchases, over and above the bill of exchange." On the 20th January, 1873, Morrison & Co. bought for Bibb, through Waters & Co., of New York, five hundred bales of cotton to be delivered in April, and five hundred bales deliverable in May. The market in New York having a downward tendency, on the 11th March, 1873, Morrison made sales of these contracts, informing Bibb thereof, which he repudiated, unless the May contract was replaced, and five hundred bales for delivery in June were purchased. The April contract seems to have been replaced, and cotton continuing to lower in price, and Bibb declining to make further advances, or to indemnify Morrison & Co. for making them, the transaction was closed, leaving a balance against Bibb of more than two thousand dollars in excess of the bill of exchange. The purchases and sales of cotton for Bibb were to be made in the city of New York, and there was no express understanding or agreement between him and Morrison & Co. as to the actual delivery of the cotton, nor was there any express understanding or agreement as to a settlement, nor

[Hawley v. Bibb.]

. the terms of such settlement, between Bibb and the persons with whom they negotiated contracts for him. It is a fair inference from the evidence that Bibb and Morrison each expected and intended that the contracts would be made as such contracts were usually made in the city of New York. The contracts were actually made, of which Bibb was informed, in view of, and subject to, the rules and regulations of the Cotton Exchange of New York City. According to these rules, as they are found in the record, and as they are embodied in the contracts made by Morrison & Co., the seller of the cotton had the option, on five days' notice, at any time within the month designated for delivery, to deliver the cotton in quantities of not less than fifty bales, and the purchaser was bound to receive it, paying the contract price.

The effect and validity of contracts for the sale and future delivery of personal property, of which the seller has not possession or ownership at the time of the sale, has been the subject of much contestation and litigation in the courts of this country and of England, in recent years. Since the decision of the Court of Exchequer in *Hibblewhite v. M'Morine*, 5 Mess. & Wels. 462, departing from and overruling the opinion expressed by Lord TENTERDEN in *Lorymer v. Smith*, B. & C. (8 E. C. L.), 1, and in *Bryan v. Lewis*, Ryan & Moody (21 E. C. L.), 386, the authorities generally have concurred, that a contract for the sale of goods to be delivered at a future day, is valid, though at the time the vendor has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by a purchase at some time before the day of delivery.—*Stanton v. Small*, 3 Sandf. (Sup. Ct.) 230; *Bigelow v. Benedict*, 70 N. Y. 202; *Yerkes v. Solomon*, 18 N. Y. Sup. Ct. (11 Hun) 471; *Gregory v. Wendell*, 39 Mich. 337; *Logan v. Musick*, 82 Ill. 415; *Kirkpatrick v. Bonsall*, 72 Penn. St. 155; *Rumsey v. Berry*, 65 Me. 570; *Porter v. Viets*, 1 Bissell 177; *Clarke v. Foss*, 7 Bissell 540. But whatever may be the form of the contract, if from the nature of the transaction, and the circumstances attending it, whether the contract is written or unwritten, it is apparent, that the purpose was not to buy or to sell the goods, that no delivery of them was intended—that title to them should never pass, but that at the time appointed for delivery, the transaction should be closed upon the basis of the then market price of the goods, the losing party paying to the other the difference, the transaction is a wager, and though there may not be a statute denouncing it as violative of public policy, it is offensive to the common law and void.—*Grizewood v. Blane*, 11 Com. Bench (73 Eng. C. L.), 526; *Gregory v. Wendell, supra; Kirkpatrick v. Bonsall, supra; Ex parte Young*, 6 Bissell, 53; *Rumsey v.*

[Hawley v. Bibb.]

*Berry, supra; Brua's Appeal,* 55 Penn. St. 294; *Lyon v. Culbertson,* 83 Ill. 33.

Brokers, or agents are frequently employed to make such contracts. The general rule is, that even when such contracts are in fact wagers, if in them the broker or agent has no interest; if in any event he can not gain or lose; whether there is profit or loss, he is entitled to his commissions only, the principal is bound to reimburse him for advances, if he subsequently executes his note or bill, or makes an express promise to pay them; or if, with full knowledge of the facts, without objection he permits the transaction to proceed, if there be not a statute pronouncing the transaction illegal and void.—*Cannan v. Bryce,* 3. Barn. & Ald. 179; *De Begnis v. Armistead,* 10 Bing. 105; *Ashton v. Dakin,* 4 Hurl. & Norman, 869; *Knight v. Cumbers,* 15 Com. Bench, (80 Eng. C. L.) 563; *Rosewarne v. Billing,* 15 Com. Bench, N. S. (109 Eng. C. L.) 316; *Brown v. Speyers,* 20 Gratt. 296; *Clarke v. Foss,* 7 Bissell 540.

The statute of this State pronounces all contracts founded in whole or in part on a gambling consideration, void; and any person who has lost money or other thing of value upon any game or wager, can recover it in an action commenced within six months after payment or delivery.—Code of 1876, § 2131. Negotiable promissory notes, or bills of exchange made upon a gaming consideration, or for a wager, under the operation of the statute, are void, even in the hands of an innocent holder for value.—*Manning v. Manning,* 8 Ala. 138; *Saltmarsh v. Tuthill,* 13 Ala. 390; *Ivey v. Nicks,* 14 Ala. 564.

There are connected with this particular transaction facts and circumstances indicating that the purpose of Bibb, as was known to Morrison, was neither to buy or sell cotton actually, nor to receive or deliver it, at the time appointed for delivery; that neither of them contemplated the investment of money in a purchase of cotton, but simply the staking of margins to cover difference in price; and that the final settlement of the transaction should result only in Bibb receiving or paying the difference in the contract price, and in the market price at the time appointed for delivery. If this be the proper solution of the evidence, the consideration of the bill of exchange, as between them, represents a loan or advance of money, to bet or stake as a wager on the future price of cotton. One who loans or advances money for the purpose of being used in gambling, can not recover it.—*M'Kinnell v. Robinson,* 3 Mees. & Wels. 434; *Perkins v. Savage,* 15 Wend. 412; *White v. Buss,* 3 Cush. 448; *Cannon v. Bryce,* 3 Barn. & Ald. 179. And if the contract had contemplated that the money should have been advanced and loaned in this State, upon transactions made here, the bill of exchange would fall within the

[Hawley v. Bibb.]

interdiction of the statute, and would be void even in the hands of an innocent holder for value.

The case does not require that we should inquire whether this is the just solution of the evidence. The contract between Bibb and Morrison, though entered into in this State, did not contemplate that any act should be done and performed, or any transaction had here, in performance of it. All acts or transactions in pursuance of it, were to be done and performed, as they were done and performed, in the City of New York. There the advances or loans, on the faith of the bill, and for which the bill was a security, were made, and the purchases of the cotton were there made. The force and validity of the contract must therefore be measured by the law of that State, and not by the law of this State. If there be a statute of that State touching wagering contracts, it does not form a part of the evidence in the cause. The presumption must therefore obtain, that the common law there prevails and is of force. Whether a wager on an indifferent subject was offensive to the common law, or whether it would be enforced, is not a question for consideration. A wager contrary to good morals, or sound policy was void at common law.—*Ball v. Gilbert,* 12 Me. 397. Gaming contracts of every species, and contracts of this character are gaming contracts, were void at common law.—*Grizewood v. Blane, supra; Pritchett v. Ins. Co.* 3 Yeates, 438. It must be assumed then, if the contract out of which the bill arises, is of the character we are supposing, that it is void by the common law prevailing in New York. A *bona fide* holder of the bill, and that the appellant stands in that capacity is not questioned, can not be affected by the illegality of consideration, which would render it void as between the immediate parties. Illegality of consideration affects the right and title of *bona fide* holders, only when by statute the invalidity of the instrument is pronounced, and it is made void in the hands of every holder, whether he has notice of the illegality or not.—*Saltmarsh v. Tuthill,* 13 Ala. 390.

This proposition is not controverted, but it is insisted, that though the appellant takes the bill freed from all infirmity because of illegality of consideration, he does not so acquire the mortgage, which was not expressly assigned to him, and which passes as the mere incident to, and security for the bill. But we think that the weight of authority is, that on a bill to foreclose by the assignee of the mortgage debt, no other or further defenses as to the validity of the debt are open, than could be made, if the action were at law upon the debt.—*Pierce v. Faunce,* 47, Me. 507. It would be rather anomalous, that the appellant should have an unquestioned right to the debt—that in equity and good conscience the appellee should be bound to

[Collier & Son v. Faulk & Martin.]

pay it to him, and yet, that a security for the debt, the mere incident to the debt, should not be enforced.

The decree of the chancellor must be reversed, and a decree here rendered granting the appellant appropriate relief.