SAMUEL W. LEWIS, APPELLANT, *v.* CHARLES G. WILSON, AS PRESIDENT OF THE CONSOLIDATED STOCK AND PETROLEUM EXCHANGE OF NEW YORK, RESPONDENT.

*Power of an incorporated stock and petroleum exchange to suspend a member for a breach of contract, after notice to him and an opportunity given him to appear and appeal from the decision — an action to restrain the enforcement of its decision does not lie when the member appeared, but refused to answer, and did not appeal.*

An action was brought against the defendant, as president of the Consolidated Stock and Petroleum Exchange of New York, an unincorporated association, to restrain it from enforcing the decision of its committee suspending the plaintiff, because of the breach of a contract made by him, after a complaint had been made to it, and notice thereof had been given to him. The plaintiff appeared before the committee, objected to their proceeding upon the complaint, and refused to answer questions put to him, and the committee thereupon made the decision, of which notice was given to him and, also, that, under section 9 of article 6 of the constitution of the association, he must either pay the amount or appeal within forty-eight hours to the arbitration committee, under penalty of suspension.

*Held,* that the plaintiff could not, in this action, object to the authority of the association to suspend him upon the ground that the contract which he had broken was illegal and void, as that fact should have been shown to the committee before whom he appeared, and if he had shown the fact to be so, and the committee had improperly decided against his evidence, the constitution supplied him with means of redress by way of an appeal to the arbitration committee, which was empowered to re-examine and rehear the case.

That when authority of this description is provided, for the security and protection of the rights of a member of such an association, he is required to avail himself of it before he can appeal to the courts to restrain the action of the committee or association.

*Loubat* v. *Le Roy* (40 Hun, 546) and *Lafond* v. *Deems* (81 N. Y., 507) followed; *Heath* v. *President of Gold Exchange* (7 Abb. [N. S.], 251) distinguished.

APPEAL from a judgment dismissing the complaint entered, after a hearing at Special Term, in the office of the clerk of the county of New York on February 4, 1888.

*Albert A. Abbott,* for the appellant.

*Sullivan & Cromwell,* for the respondent.

DANIELS, J. :

The defendant was sued, as the president of the Consolidated Stock and Petroleum Exchange of New York, an association unin-

corporated, consisting of more than seven members. Its business was limited to furnishing facilities to its members for the purchase and sale of petroleum, stocks, bonds and other securities, agricultural and commercial, products, ores, metals and other minerals. The plaintiff became a member of the association at or about the time when it was formed, and he entered into contracts with William M. Banks for the sale to him of stock of the Delaware & Hudson Canal Company, the Union Pacific Railroad Company, Western Union Telegraph Company, and Delaware, Lackawanna & Western Railroad Company. The form of the agreements made by the plaintiff was the same in each instance, and the following is one of these agreements:

"New York, *Dec.* 10, 1886.

"For value received, the bearer may deliver me one hundred (100) shares of the stock Delaware & Hudson Canal Company, at one hundred and three (103) per cent, any time this year.

"All dividends for which transfer books close during said time go with the stock, one day's notice required except last day.

"Expires Dec. 31, 1886, }   "SAMUEL W. LEWIS.
    2.15 p. m.    }

"Endorsed: 100⅞, S. W. L. O'C., Dec. 16."

The plaintiff failed to perform the agreement entered into by him, and a loss was thereby occasioned which was audited and fixed by a broker at the sum of $937.50. The evidence of the broker was to the effect that the plaintiff empowered him to adjust this loss, and the testimony given by W. M. Banks as to what took place between himself and the plaintiff when he called upon the latter for payment, tended further to establish the authority of the broker to make the adjustment. This, however, was denied by the plaintiff, but in this state of the evidence no more than an ordinary question of fact was presented, the decision of which by the court in favor of the defendant, has become conclusive against the plaintiff.

The constitution of the association to which the plaintiff became a party, provided for the existence of a complaint committee, consisting of five members, and that committee was empowered to take cognizance of complaints made by one member against another

for failing to fulfill contracts entered into between them, or to pay and adjust the amount which, by virtue of a contract, should become due from one of the members to the other. By these provisions it was declared that (sec. 9) any member of this association who shall be accused of   *   *   *   a breach of contract shall, upon complaint, be summoned before the complaint committee, who shall hear and investigate the case. In the matter of a breach of contract, if the committee shall render a decision establishing a money difference between the parties, it shall, upon notice to the party or parties against whom the decision is rendered, stand as a claim against him, and shall be paid within forty-eight hours, or taken on appeal to the arbitration committee. A failure to pay or appeal within the time specified, shall subject the party in default to suspension.

The plaintiff did fail to discharge the amount adjusted against him, by reason of his default in the performance of the agreements made by him, and a complaint was thereupon made by W. M. Banks, the other party to the agreements, setting forth this default; and notice was thereupon given to the plaintiff that if the amount remained unpaid for twenty-four hours he would be reported for suspension. He failed to make this payment, and he was thereupon summoned to appear before the complaint committee on the 28th of January, 1887, at 3.45 P. M., and a copy of the complaint previously filed was served upon him with this summons. He was also afterwards summoned to appear and attend before the committee, to be examined as a witness in the proceeding. He did appear before the committee, and objected to their proceeding upon the complaint which had been made. Questions were asked him on what grounds he refused to answer, and whether he had authorized Mr. O'Connor to settle the claims, and whether he denied the authority of O'Connor or admitted it. These questions he declined to answer, neither admitting nor denying the authority of O'Connor. The committee, after hearing the case, made their decision against the plaintiff for the adjusted differences in the contracts, and notice was given to him of this decision, directing his attention to section 9 of article 6 of the constitution, that the amount must be paid within forty-eight hours, or an appeal taken to the arbitration committee, on penalty of suspension. The plaintiff failed to take the appeal

or make the payment, and he was suspended from his privileges as a member of the association.

The action was brought by him to restrain the enforcement of his suspension under these proceedings, and in support of it the position has been taken that the association was without authority to proceed against him or to suspend him, as it did, for the reason that the contracts entered into between himself and W. M. Banks were illegal and void under the provisions of the statute of, the State prohibiting betting and gaming; and if they were of that description, then the conclusion would follow that these contracts entered into by the plaintiff were inoperative and void. But to render agreements of this description illegal and void it must appear affirmatively that they were entered into as gaming contracts and not as real transactions for the purchase and sale of property. *Story* v. *Salomon* (71 N. Y., 420); *Yerkes* v. *Salomon* (11 Hun, 471); *Kingsbury* v. *Kirwan* (77 N. Y., 612), and the other authorities relied upon in support of the appeal, concede the correctness of this principle. (*Kiley* v. *Western Union Tel. Co.*, 39 Hun, 158; *Irwin* v. *Williar*, 110 U. S., 498; *Gregory* v. *Wendell*, 39 Mich., 337.) And when that intent is not made to appear a contract for the future sale or delivery of stocks, or other property not owned by the seller at the time, is a valid agreement capable of being enforced between the parties making it. (*Bigelow* v. *Benedict*, 70 N. Y., 202.) But if these agreements, or either of them, were speculative or fictitious, which article 19 of the constitution of the association forbade the members to enter into, that should have been shown to the committee before whom the plaintiff was summoned to appear and answer the complaint filed against him, for, by the constitution of the association, the committee was empowered to try that complaint, and, as incidental to that authority, to hear and consider any matter which should be alleged or proved forming an answer to the complaint, either legally or by proving the facts complained of to be unfounded. This authority was clearly provided and stipulated for in the constitution of this association; and that it might legally be so provided has the sanction of the authorities considering the powers in this manner delegated to a committee of an unincorporated association. (*Dawkins* v. *Antrobus*, L. R., 17 Ch. Div.,

615; *White* v. *Brownell*, 2 Daly, 329; *Olery* v. *Brown*, 51 How., 92.) And so much at least was assumed to be the authority of such an association in *Loubat* v. *Le Roy* (40 Hun, 546). This legal and equitable principle is obnoxious to nothing that was held in *Austin* v. *Searing* (16 N. Y., 112), which was an action brought to enforce a title to property through the forfeiture of a subordinate lodge for alleged misconduct on its part. The proceeding before the committee of this association was invested with no such power, neither has any such consequence been insisted upon as resulting from what has taken place. No proceeding has been, or can be, under the constitution of the association, taken against the plaintiff to enforce the collection of the money he has failed to pay, by seizure or sale of his property. All that it is claimed may be done is the forfeiture of his privileges as a member of the association, while he shall fail or refuse to comply with the decision which has been made against him. And the fact that the forfeiture might possibly hereafter be followed by expulsion, will not change the nature of the proceeding. So far as it has been extended, that has been done under the clear authority of the constitution of the association. It has resulted in no more than the suspension of the plaintiff from the privileges of the association, and if he was not subject to the imposition of this disability, he should not only have appeared, but have shown the fact to be so before the committee, and in that manner protected himself against the exercise of even this power of suspension; and if he had made that fact to appear and the committee had improperly decided against his evidence, the constitution supplied him with means of redress by way of an appeal to the arbitration committee,which was empowered to re-examine and rehear the case. And when authority of this description is provided for the security and protection of the rights of a member, he is require to avail himself of it before he can appeal to the courts to restrain the action of the committee or the association. (*Loubat* v. *Le Roy*, *supra.*) And *Lafond* v. *Deems* (81 N. Y., 507), where it was said that " courts should not, as a general rule, interfere with the contentions and quarrels of voluntary associations, so long as the government is fairly and honestly administered, and those who have grievances should be required, in the first instance, to resort to the remedies for redress provided by their rules and regulations." (Id., 514.)

It has been urged under the authority of *Heath* v. *President of Gold Exchange* (7 Abb. [N. S.] ,251), that the plaintiff had the power to disaffirm the authority of the committee and to refuse to be bound by the proceedings, and that was held to be the right of the party in that case on the principle that a person agreeing to submit a dispute to arbitration might revoke the authority of the arbitrators, but this was not such a case. It was not an arbitration nor within this principle applicable to those proceedings, but it was a hearing over which the committee had jurisdiction as long as the plaintiff remained a member of the association, and he could only disaffirm or disregard that authority by terminating his membership in the association itself. Beyond that the objection which is now in this manner urged in behalf of the plaintiff was not taken by himself when he appeared before the committee; neither was it by the letter of his counsel written to the secretary of the committe in answer to the proceedings taken against him. And, still further than that, the court, in its disposition of the action, has assumed that the contracts were valid obligations which the plaintiff entered into for the sale of these shares, and there is no such preponderance of evidence against that conclusion as would justify its disaffirmance on appeal. The case was rightly disposed of at the trial, and it should be affirmed with costs.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment affirmed with costs.