JOSEPH M. WATTE AND FRANK F. AXTELL

v.

M. J. COSTELLO.

*Gambling   Contract—Options—Board of   Trade—Set-off — Evidence— Instructions.*

1.  It is proper, in a given case, for the jury to consider the course of dealing between the parties to a given transaction in order to enable them to come to a conclusion as to the nature thereof.

2. A contract for the sale and future delivery of grain, by which the seller has the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they choose, and which, on its maturity, is to be filled by adjusting the differences in the market value, is an option contract in the nature of a gambling transaction.

3. In an action brought to recover sums representing margins advanced and profits claimed to have been made out of the purchase and sale of grain upon the Chicago Board of Trade, defendants contending that a balance is due them arising out of certain losses sustained on purchases made for the plaintiff, this court holds that the judgment for the plaintiff can not stand.

4. The plaintiff in such case can recover any sum deposited by him merely for his convenience.

[Opinion filed March 13, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Messrs. EDWARD W. RUSSELL and WILLARD M. McEWEN, for appellants.

Mr. S. P. DOUTHART, for appellee.

WATERMAN, J. M. J. Costello, a resident of Indiana, in May, 1888, directed one Percy Taylor, of Remington, who was coming to Chicago to deal on the Board of Trade, to buy *some* corn and draw on him, Costello. Shortly afterward he received the following telegram:

"May 22, '88, Chicago, Ill.

"Bot. you ten July corn,.fifty-five quarter; break over.

"P. S. TAYLOR."

And also a draft by Elmendorf, Watte & Co. for $1,000, which he paid.

Costello came to Chicago, saw one Forbes, then a member of the firm of Elmendorf, Watte & Co., gave through Forbes various orders to the firm to buy and sell grain, and insists that he told Forbes to buy nothing except what he, Costello, told him, and to report what he did buy.

Costello admits that six trades, upon four of which there was a profit of $2,156.25, and two in which there was a loss

of $1,006.25, leaving a net profit of $1,150, were ordered by him. These six transactions occurred in the space of twenty days, and involved the purchase and sale of 320,000 bushels of grain. Appellants say that two other "deals" were ordered by him, involving 100,000 bushels and resulting in a loss of $10,150; these, he declares, he never ordered. Appellee, Costello, sued to recover the profit on six " deals"... $1,150
Draft paid by him.............................  1,000
Draft made "    "   .............................  1,500
and interest 'thereon, and recovered a verdict and judgment for $4,150.

Appellants filed pleas of set-off, claiming the right to recover the loss of $10,150, less the amount of the above mentioned profits and drafts, $3,650, leaving a debit balance of $6,500.

Appellants, Watte & Co., asked the court to instruct the jury as follows:

" The jury are instructed that a contract for the sale and future delivery of grain, by which the seller has the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they choose, and which on its maturity is to be filled by adjusting the differences in the market value, is an option contract in the nature of a gambling transaction, prohibited by law. And, if the jury believe from the evidence that the purchases and sales of grain involved in this suit were made, and were intended by both Costello and the firm of Watte & Co. to be made, as a means of gambling on the fluctuation in the market price of such grain, and that no delivery or acceptance of grain was intended by either of the parties, then the plaintiff, Costello, is not entitled to recover for any alleged profits or margins, and the defendants, Watte & Co., are not entitled to recover for any margins upon the losses alleged to have been sustained by them. Neither can recover in such event."

That the foregoing is a correct statement of the law can not be gainsaid. Criminal Code, Starr & C. Ill. Stats.; Pickering v. Cease, 79 Ill. 328; Cothran v. Ellis, 125 Ill. 496; Tenney v. Foote, 4 Ill. App. 594; Schneider v. Turner, 27 Ill.

App. 220; Same v. Same, 130 Ill. 28; Gregory v. Wendell, 39 Mich. 337; Yerkes v. Salomon, 11 Hun, 437; Cunningham v. The National Bank of Augusta, 71 Ga. 400; Barnard v. Backhouse, 52 Wis. 593; Fareira v. Gabell, 89 Penn. St. 294; Hawley v. Bibb, 69 Ala. 52.

This is not disputed.    The insistance is, that there was no evidence that these were gambling transactions.

It was admitted that appellee bought and sold grain as follows:

Bought May 22, 10,000 bu. July corn;
Sold the same June 4th.
Bought May 23, 30,000 bu. August wheat;
"    June 1, 25,000 "    "    "
"    June 2, 25,000 "    "    "
"    June 8, 20,000 "    "    "
Sold same June 8th.
Bought June 5, 25,000 bu. July wheat;
"    "    6, 25,000 "    "    "
"    "    6, 50,000 "    "    "
Sold    June 7, 25,000 "    "    "
"    "    7, 55,000 "    "    "
"    "    8, 20,000 "    "    "
Sold June 11, 50,000 bu. July corn;
Bought June 19, 50,000 bu. July corn.
Bought June 12, 75,000 bu. July wheat;
Sold    "    13, 75,000 "    "    "
Sold    June 12, 20,000 bu. July corn;
Bought "    13, 20,000 "    "    "
Sold    June 11, 50,000 bu. July corn;
Bought "    19, 50,000 "    "    "
Bought June 14, 25,000 bu. July wheat;
Sold    "    21, 25,000, "    "    "

Making an aggregate of 290,000 bushels of wheat and 130,000 bushels of corn, the purchase price of which was over $300,000.    There was evidence, also, that besides this he durchased and sold

50,000 bu. August wheat, and
19,000 "    July wheat.

The two last mentioned deals are those which he denies all connection with. However this may be, the purchase and sale, within a period of twenty-one days, of 430,000 bushels of grain, was admitted.

At the time these transactions were had, appellee was and had been for two years in the hay business; it did not appear that he was a dealer in grain except in the matter of these trades, or that he had or expected to have any use for grain, or tha the ever received, delivered, paid for, or received payment for any, or made any preparation for receiving or storing any.

All of these vast transactions were made, so far as he was concerned, upon the sum of $1,000 advanced as margins, and $1,500, which for his convenience he placed in the hands of appellants. In each instance where he purchased grain, he sold it out before the time arrived at which it was to be delivered to him; and in the instances in which he sold grain that he did not possess and had no bargain for, *i. e.*, " sold short," he bought in the same long before the time at which he was bound to deliver it, and thus closed the " deal."

July 5th he wrote to appellants :  " As you have my money in your hands, buy me ten or fifteen corn or wheat, margin with part of it, if you think there is no danger of loss; do not hold but scalp with them; there is more money in that than any other way."

This evidence left the question as to whether the transactions were intended by all parties to be but option deals, in which there was not, upon the part of either appellants or appellee, an intention to actually receive and pay for any grain, but was what the law declares to be gambling, a question for the consideration of the jury. This court held in Beveridge v. Hewitt, 8 Ill. App. 467, that it is proper for the jury to consider the course of dealing between the parties in arriving at a conclusion as to what the nature of the transaction was. The eighth instruction asked for by appellants should therefore have been given.

The draft for $1,500 seems to have been given by appellee as a kind of banking deposit, rather than for the purpose of

margins; it was not needed for that purpose, was not asked for, and the evidence appears to be that the money was left with appellants merely for the convenience of appellee; if such was the case, the other transactions constitute no bar to its recovery. If the question should become material, the burden of showing that there was no consideration for the check for $3,500 would be upon appellee, appellants first showing demand upon the payee for payment. Conroy v. Warren, 3 Johns. Cases, 259; Hoyt v. Seeley, 18 Conn. 357; Fleming v. McClain, 13 Penn. St. 177.

This court, in Hayden v. Hoxie, 27 Ill. App. 533, said:

" The law is, that a writing is admissible in evidence in all cases where it was made by the witness at the time of the fact, for the purpose of preserving the memory of it, if, at the time of testifying, he can recollect nothing further than that he had accurately reduced the whole transaction to writing." To the rule as thus announced we adhere.

The judgment of the court below must be reversed and the cause remanded.

*Reversed and remanded.*