## HENRY M. TENNEY ET AL.

v.

## IRA W. FOOTE.

1. OPTION CONTRACTS.—The word "option," as used in the statute of this State, prohibiting option sales and contracts, means a mere choice, right or privilege of selling or buying; and it is the privilege of selling or buying at a future time any commodity, which the statute was intended to prohibit, as contradistinguished from an actual sale or purchase with the intention of delivering and accepting the commodity specified.

2. NOTE GIVEN FOR DIFFERENCES VOID.—The statute was enacted from motives of public good, and to repress an evil, and no matter what form the transaction bears as to the terms of the contract, still, if the form be colorable only, and the real intention of the parties be that there is to be no sale of the article, no delivery or acceptance, but that the transaction is to be adjusted only upon differences, it is a gambling transaction within the meaning of the statute, and a note given therefor, even in the hands of a *bona fide* holder, is void.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding. Opinion filed December 8, 1879.

Messrs. McCoy & PRATT, for appellants; that where a promise is legal in part and illegal in part, and the legal can be severed from the illegal, the legal part may be enforced, cited 2 Parsons on Contracts, 252; Parsons' Mercantile Law, 55.

Generally as to the law governing contracts on the Board of Trade: Wolcott v. Heath, 78 Ill. 433; Pixley v. Boynton, 79 Ill. 351; Logan v. Musick, 81 Ill. 415; Corbett v. Underwood, 83 Ill. 334; Gilbert v. Gouger, 10 Chicago Legal News, 340; Lehman v. Strasbourger, 2 Wood C. C. 554; Black v. Fiedemann, Ct. App. St. Louis, Chicago Legal News, Dec. 14, 1878; Clark v. Foss, U. S. Dist. Ct. W. D. Wis.

Mr. EMORY A. STORRS, for appellee; as to the intention of the parties governing and determining the character of the contract, cited Grizewood v. Blaine, 11 C. B. 526.

Upon the rule of legal and illegal considerations as affecting

Tenney v. Foote.

contracts: Metcalfe on Contracts, 216; Gibbons v. Prewd, Harder, 102; 2 Chitty on Contracts, 973; Story on Agency, 420; Waite v. Jones, 1 Bing. New Cas. 660; Featherstone v. Hutchinson, Cro. Eliz. 199; Shakell v. Rosier, 2 Bing. New Cas. 645; Howden v. 'Haigh, 11 A. & E. 1033; Barton v. Port Jackson Plank Road Co. 17 Barb. 597; Robey v. West, 4 N. H. 285; Carlton v. Wicher, 5 N. H. 285; Carlton v. Woods, 8 Foster, 296; Collins v. Newell, 2 Met. (Ky.) 584; Pettit v. Pettit, 32 Ala. 288; Rose v. Truax, 21 Barb. 361; Filson v. Harris, 5 Barr, 452; Crawford v. Morrill, 8 Johns. 196; Chandler v. Johnson, 30 Ga. 85; DeBeerski v. Page, 36 N. Y. 537; Saratoga Bank v. King, 44 N. Y. 87; Marsh v. Russell, 2 Lans. 340.

As to the effect of an illegal consideration upon subsequent or collateral contracts: Mitchell v. Cockburn, 2 H. Bl. 379; Boothe v. Hutchinson, 6 T. Rep. 409; Auburt v. May, 2 Bos. & Pul. 383; *Ex parte* Daniels, 14 Ves. 192; *Ex parte* Mather, 3 Ves. 373; Otley v. Brown, 1 Ball & B. 366; Steers v. Lashley, 6 T. Rep. 561; Carmon v. Boyce, 3 Barn. & Ald. 179; Brown v. Turner, 2 T. Rep. 630; Webbe v. Brooke, 3 Taunt. 6 Clayton v. Dilley, 4 Taunt. 165; Simpson v. Blosh, 3 Marsh, 542; *Ex parte* Bell, M. & S. 751; Lightfoot v. Tennant, B. & P. 551; Paxton v. Poham, 9 East, 408; Gas Light & Coke Co. v. Turner, 5 New Cas. 666; Adams v. Rowan, 8 S. & M. 624; Smith v. Barstow, 2 Doug. 155; Scale v. Robertson, 14 S. & M. 18; Gray v. Hook, 4 Com. 449; Filson v. Hines, 5 Barr, 452; Coulter v. Robertson, 14 S. & M. 18; Boutelle v. Melendy, 19 N. H. 196; Bates v. Watson, 1 Sneed, 376; Shelton v. Marshall, 16 Tex. 344; Hooker v. Knab, 26 Wis. 511; Baldwin v. Palmer, 6 Seld. 232; *In re* Greene, 7 Biss. 338.

The statute prohibits such contracts: Criminal Code, §§ 130, 131.

Upon the construction to be given to the statute: Sanborn v. Benedict, 78 Ill. 309; Wolcott v. Heath, 78 Ill. 433; Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33.

As regards the effect of a statute upon matter prohibited, there is no distinction between *malum prohibitum* and *malum in se:* Lewis v. Welch, 14 N. H. 294; Greenough v. Balch, 2 Greenlf. 462; Utica Ins. Co. v. Kipp, 8 Cow. 20; White v.

Franklin Bank, 22 Pick. 184; Lowell v. Boston & Lowell R. R. Co. 23 Pick. 32; Schermerhorn v. Talmon, 4 Kernan, 124.

When wagering is illegal under the statute or at common law, the illegality will extend to all antecedent contracts made in aid of such purpose: Watson v. Fletcher, 7 Gratt. 1; Bettis v. Reynolds, 12 Iredell, 344; Brown v. Watson, 6 B. Mon. 588; Cannon v. Brice, 5 B. & Ald. 179; McKinnell v. Robinson, 3 M. & W. 435; Perkins v. Savage, 18 Wend. 418; Branchback v. Crockrun, 5 Ala. 265; Wooten v. Miller, 7 S. & M. 386; Duncan v. Cox, 6 Blackburn, 270.

The law will not support an illegal contract: 2 Chitty on Contracts, 975; Holman v. Johnson, Cowp. 341; Myers v. Mienreth, 101 Mass. 367; Chappell v. Hall, 7 Wall. 558; Boutell v. Melenda, 19 N. H. 196; Lee v. Collins, 4 Sneed. 393; Carrus v. Polk, 4 Cold. 87; Bailey v. Tabor, 5 Mass. 296; Farrar v. Burdon, 5 Mass. 395; Wheeler v. Russell, 17 Mass. 258;

PER CURIAM. This case was tried before the Circuit Court, without a jury, and Judge McAllister, who presided at the trial, on rendering judgment for the appellee, filed in the cause an opinion in which are fully stated the reasons for his decision. We have been furnished by the respective counsel with very elaborate and exhaustive arguments, and have given the same our careful consideration. As the result of our deliberations, we are inclined to concur with and adopt Judge McAllister's opinion as the opinion of this court, and upon the principles therein stated, the judgment of the Court below will be affirmed.

Judgment affirmed.

McAllister, J., took no part in this opinion.

[The following is the opinion of McAllister, J., in this case, delivered in the Circuit Court of Cook county, and referred to in the above opinion.]

McAllister, J. This suit is to recover against Foote as guarantor of a note for $5,000 and interest, made by the

trustees of the Couch estate, payable to Foote, and by him transferred to S. G. Hooker & Co., and by them to plaintiffs.   The defense is that the consideration for the guaranty by defendants was an account of S. G. Hooker & Co. against Foote, which arose out of, and in performance of, an unlawful contract made by them, whereby S. G. Hooker & Co., as commissionmen, doing business on the Chicago Board of Trade, should deal thereon for Foote in options, and settling upon differences, contrary to the statute against gambling.

The case is submitted to the court for decision upon the evidence, without a jury.

It appears from the evidence, that in the latter part of 1874, at Chicago, S. G. Hooker & Co. were commission men, doing business on the Board of Trade.   Foote was a mechanic, and, apparently, rather ignorant and inexperienced in matters outside of his own proper business.   He had, however, been seized with the desire to make money fast and easy, and had employed one Adams as a factor, to buy a quantity of oats for him.   The oats were received and carried for some time.   A loss ensued, and, in his inexperience, Foote had recourse to S. G. Hooker to act for him in adjusting this loss.   He did so; the loss was adjusted at $2,500, and Foote paid it.   Thereupon Hooker began to solicit Foote, if he wanted to deal any more, to employ him, saying he could make some money for him.   Foote, fresh from his recent experience, declared at once that he would handle no more grain; that he had no money to put up; but if Hooker would deal for him in options and settle upon differences, he thought he would employ him.   Hooker replied that he could, and an agreement was concluded, to the effect that Hooker should go on and deal for Foote on the board, but with the distinct understanding that it should be only in options, and that no produce should be delivered or received on his account, but the transactions should be settled upon differences.   This contract is fully proved, and without any conflict of evidence in reference to it.

Hooker & Co. proceeded under and in performance of that contract to deal for Foote on the board; kept it up for over a year, and until they rolled up an account against him for

differences, commissions, and money claimed to have been advanced, amounting to about $22,000. It appears that during the time of these dealings, Hooker & Co. obtained from Foote his note, payable to their order, for $15,000, but which they still had in their possession. On the final settlement, Foote paid about $2,000 cash, and for the balance of the account turned over to them as security, notes made by the trustees of the Couch estate, payable to him, amounting in all to 20,000; the payments of which Foote guaranteed; Hooker & Co. returning to Foote his own note for $15,000. One of the Couch notes, so turned over, is the subject-matter of this suit.

The statutes of this State against gambling are embodied in the Criminal Code in R. S. 1874, pp. 372–3.

Sec. 130 declares as follows: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company * * * shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

The question whether or not the original contract between Foote and Hooker & Co. falls within this statute, is the turning one in the whole case, so far as the defense is concerned. There has been much difference of opinion as regards the nature of the contract prohibited. It must be, to fall within the prohibition, a contract to have to one's self, or give to another, an option to sell or buy some commodity at a future time. The word "option" is one much in use on the Chicago Board of Trade, and probably has more than one sense given to it there. Boards of trade, for dealing in the principal products of the country, are of comparative recent origin. The system seems to have been borrowed from, and, in its general features, modeled after, the more ancient institution known as the stock exchange, in which many phrases, words and terms of peculiar local meaning came into use; and it will be found that many of these have been carried into and adopted in boards of trade. Now the word "option" was in use long ago in the stock

Tenney v. Foote.

exchange, and seems to have acquired a definite meaning. As there used, it meant "A stipulated privilege to a party in a time contract, of demanding its fulfillment on any day within the specified limit." Webs. Dict. Ed. 1872, p. 917.

In practice on the stock exchange, it was often the intention of the parties that no stock should be delivered, but the transaction settled upon differences. This became common, and the English statute was aimed at its repression because it was, in effect, gambling. Our statute is directed against the same evil, and extends to transactions in grain and other commodities as well as stocks. So that the word "option" as used in the statute here, taken with the context, means a mere choice, right or privilege of selling or buying; and it is the contracting for such choice, right or privilege of selling or buying at a future time any commodity the statute was intended to prohibit, as contradistinguished from an actual sale or purchase, with the intention of delivering and accepting the commodity specified. The statute was passed from motives of public good, and to repress an evil. Hence, it follows from established rules of law, and their analogies in such cases, that no matter what form the transaction bears as to the terms of the contract, still, if such form be colorable only, and the real intention of the parties be that there is to be no sale of the article—no delivery or acceptance of it—but the transaction to be adjusted only upon differences, it is a gambling transaction within the statute.

In Grizewood v. Blane, 11 C. B. 73, E. C. L. Reports, 538, suit was brought upon a contract for the sale of shares of stock. The defense was that it was a gambling transaction under a British statute like ours. There was a contract in form, but the chief justice left it to the jury to say what was the plaintiff's intention, and what was the defendant's intention at the time of making the contract—whether either party really meant to purchase or sell the shares in question, telling them that if they did not, the contract was, in his opinion, a gambling transaction, and void. The jury found for the defendants. Of course there were circumstances in evidence tending to show their intention. On motion for new trial

before the full bench, the direction of the chief justice to the jury was held to be right, the court holding that the intention of the parties that there should be no delivery of the stock, and that they should settle upon differences, rendered it a gambling transaction and void. Steers v. Gashley, 6 Durnf. and East, 61; Brown v. Turner, 7 Id. 630.

In the case at bar the intention of the parties that there should be no real sales or purchases or delivery, or reception of any commodity, is made manifest by the very terms of the arrangement between them. It was, therefore, a mere engagement on the part of Hooker & Co. to gamble for Foote. This contract, tainted in its inception, was the source of authority between the principal and the brokers; and the account, which was the consideration for the guaranty, arose out of that employment, and was necessarily affected with the taint of the original contract. In Fisher v. Bridges, 3 Ellis & Blackburn, 642, the action was upon a covenant in a deed to pay the plaintiff £630. The defense was that the covenant was security for the payment of part of the purchase money of real estate sold by plaintiff to defendant, to be by the latter disposed of by lottery, contrary to the statute, which plaintiff well knew at the time of the sale. The jury found for the defendant, but the queen's bench gave judgment for the plaintiff, notwithstanding the verdict, on the ground that the covenant being under seal, no consideration was necessary. On error to the exchequer chamber, that judgment was reversed, and judgment given for defendants, because the original transaction was tainted with illegality, and the covenant being connected therewith, was affected by the same taint, and therefore void. In speaking of the covenant, the court said: "It springs from and is the creature of the illegal agreement, and, as the law would not enforce the original illegal contract, so neither will it allow the parties to enforce a security for the purchase money, which, the original bargain, was tainted with illegality." Besides the authorities cited by the court in that case, may be cited numerous American authorities to the same effect. Buck v. Albee, 26 Vermont R. 184. See Metcalfe on Contracts, p. 263 to 267.

If Hooker & Co. had sued Foote on the account, they would be compelled, in order to recover, to show their authority— their employment to act for him. To do so, they would be compelled to prove the original agreement. "The test as to whether a demand connected with an illegal transaction be capable of being enforced at law, is whether the plaintiff must rely on such transaction in order to establish his case." Chitty on Contracts, 730, and cases in notes. Therefore they could not recover upon the account. It was urged, in argument, that part, at least, of the items of the account accrued from transactions that were not illegal in any point of view. Conceding this to be so, still, if any of them accrued under the original contract, and I think most of them did, still, the whole account being the consideration for the guaranty, it would be void. No rule of law is better established than that if any part of an entire consideration is illegal, the whole contract is void. Chitty on Con. 730, and cases in notes. Sec. 131 of the statute makes void the contract of security if any part of the consideration arises out of a gambling transaction. Henderson v. Palmer, 71 Ill. 579.

It is immaterial whether plaintiffs be *bona fide* holders of the note or not, if the contract between Hooker & Co. and Foote was a gambling transaction, and within the statute against gambling, because the statute itself renders void all contracts, notes, bills, or other securities, where the whole or any part of consideration arises out of a gambling transaction. Sec. 136 declares that no assignment shall in any manner affect the defense of the person making such note or bill. Chapin v. Dake, 57 Ill. 296.

Perceiving no reason why this species of gambling, though wearing the more respectable aspect of business, should be looked upon with any less disfavor by the courts than any other species, I am constrained by the facts of this case to sustain the defense.