# GEORGE WEBSTER
## v.
## WILLIAM N. STURGES.

1. TIME CONTRACTS.—Time contracts made in good faith, for the sale and future delivery of grain, or other commodity, are not prohibited, either by the common or statute law, and are in no respect repugnant to public policy.

2. OPTION CONTRACTS.—Contracts by which either party is given an option to buy or sell, at a future time, grain or other commodity, are gambling contracts, repugnant alike to good morals and public policy, and are forbidden by the statute.

3. CHANGE OF CONTRACT.—Undoubtedly, parties after having made an illegal contract are at liberty to enter into another contract in relation to the same subject-matter, but the new contract must in no sense be a continuation or modification of the old; the old contract must be utterly abandoned, so that neither its terms nor consideration, nor any claim of right springing out of it, shall enter into the new, otherwise the new contract is void also.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed December 13, 1880.

Messrs. KNICKERBOCKER & HOLDOM, for appellant; that where the evidence fails to support the verdict, the judgment will be reversed, cited Fisher v. Burt, 5 Bradwell, 357.

When a contract grows immediately out of, or is connected with an illegal contract, it is void: 1 Parsons on Contracts, 380; Henderson v. Palmer, 71 Ill. 579; Nash v. Monheimer, 20 Ill. 215; Munsell v. Temple, 3 Gilm. 93; Wheeler v. Russell, 17 Mass. 257.

Dealings in options or puts and calls, are illegal: Rev. Stat. Chap. 38, § 130; Pickering v. Cease, 79 Ill. 328; Pixley v. Boynton, 79 Ill. 351; Wolcott v. Heath, 78 Ill. 433; Sanborn v. Benedict, 78 Ill. 309; Lyon v. Culbertson, 83 Ill. 33; *Ex parte* Young, 6 Biss. 53; *In re* Greer, 7 Biss. 338.

If any part of an entire consideration is illegal, the whole contract is void: Chitty on Contracts, 730; Tenny v. Foote, 95 Ill. 99; same case, 4 Bradwell, 594; Metcalf on Contracts,

Webster v. Sturges.

216; Henderson v. Palmer, 71 Ill. 579; Nash v. Monheimer, 20 Ill. 215; Fisher v. Bridges, 3 Ellis & B. 642.

Mr. EDGAR TERHUNE, for appellee; upon the legality of the custom among dealers on the Board of Trade to settle deals by exchange of contracts, cited Oldershaw v. Knoles, 6 Bradwell, 325.

If either party to a transaction intends it as lawful and legitimate, it will be so held: Gregory v. Wendell, 40 Mich. 432.

If one party to a contract induces the other to believe that he has withdrawn, the other need not wait until the day of performance before making other arrangements: Chamber of Commerce v. Sollitt, 43 Ill. 519.

Where parties to an illegal contract mutually abandon it and enter into a new and valid one upon a new consideration, the latter will be enforced: Mitchell v. Lyman, 77 Ill. 525; Barnes v. Hedley, 2 Taunt. 184; Chadbourn v. Watts, 10 Mass. 124; Clark v. Phelps, 6 Met. 296; Faikney v. Raynous, 4 Burr. 2069.

BAILEY, J. This was an action of assumpsit, brought by William N. Sturges, against Geo. Webster, to recover damages for the breach of an alleged contract for the sale and delivery of grain by the defendant to the plaintiff, entered into by the parties on the Board of Trade of Chicago. The plaintiff, by his declaration, alleged that on the 1st day of Nov., 1877, he entered into a contract with the defendant, by which the defendant agreed to sell to him 25,000 bushels of corn, at $43\frac{7}{8}$ cents per bushel, said corn to be delivered by the defendant to the plaintiff at Chicago, within said month of November, and to be paid for by the plaintiff on delivery; that during all of said month of November the plaintiff was able, ready and willing to receive said corn from the defendant, and to pay therefor at the rate agreed upon, and that on the 30th day of said month he demanded said corn of the defendant, but that the defendant, disregarding his said promise, failed to deliver said corn, or any part thereof, whereby the defendant became liable to pay the

plaintiff the difference between said contract price and the market price of said corn at the time when the same should have been delivered to the plaintiff.

The defendant pleaded non-assumpsit, and several special pleas, alleging, in various forms, that the contract declared on was a gaming contract, and also, that the consideration of the defendant's promises was a contract by which the plaintiff sold to the defendant an option to sell to him at a future time, to wit: at any time during said month of November, 25,000 bushels of corn at 43⅞ cents per bushel.

At the time of the transactions in question, the plaintiff and defendant were both members of the Board of Trade, and doing business thereon by way of buying and selling grain for future delivery. The evidence introduced by the plaintiff tended to show that on the last day of October, 1877, the plaintiff and defendant met, after the close of the business of the board, in the alley adjoining the Board of Trade building, or in the lower hall of said building, and that the plaintiff then and there sold to the defendant, for the sum of twenty-five dollars, an option to deliver to him, the plaintiff, within one day, 25,000 bushels of corn, at 43⅞ cents per bushel; that on the day following, the market going somewhat against the plaintiff, said parties met on the Board of Trade, and there agreed to change the option contract already made into a contract of sale, by which the defendant agreed to sell to the plaintiff 25,-000 bushels of corn, deliverable at any time within said month of November, at the defendant's option, at 43⅞ cents per bushel; that on the 26th day of November, the market price of corn having advanced considerably, the plaintiff demanded of the defendant, in accordance with the rules of the Board of Trade, that he deposit the sum of $1,500 as a margin on said contract, and the defendant having failed to comply with said demand, the plaintiff, on the day following, in accordance with said rules, bought in for account of the defendant, 25,000 bushels of corn at 49 cents per bushel, the then current market price, charging the defendant with the difference between the price so paid and the price fixed by the contract. The defendant's testimony tended to show the making of an option contract,

differing somewhat in its terms from the one proved by the plaintiff, but altogether denied the making of the subsequent contract of sale.

The jury under the instructions of the court, found a verdict in favor of plaintiff for $1,461.10, for which sum and costs judgment was rendered against the defendant. Among the instructions given to the jury at the instance of the plaintiff, was the following:

"If the jury shall believe from the evidence, that on or about October 31, 1877, Sturges sold to Webster a 'put' or privilege, by which Webster had the privilege of delivering to Sturges, within the next twenty-four hours 25,000 bushels of corn at 43⅗ cents per bushel; and if the jury further believe from the evidence, that afterwards, and on or about November 1, 1877, Sturges and Webster mutually agreed to change the put, or privilege into a regular contract of sale, and did so change it, and that it was then mutually agreed between them that Webster should sell to Sturges 25,000 bushels of corn at the price of 43⅗ cents per bushel, deliverable to Sturges at the option of Webster during the month of November, to be paid for on delivery, such contract of sale would be a valid contract, binding upon all the parties."

It is well settled that time contracts, made in good faith, for the sale and future delivery of grain or other commodity, are prohibited by neither the common or statute law, and are in no respect repugnant to a sound public policy. Where it is the intention of the parties that the vendor shall deliver and the vendee receive the commodity sold, and there is no other element of illegality, either in the terms of the contract or its consideration, the contract is valid and binding, though the time of delivery may, within fixed and reasonable limits, be optional with one party or the other. It is equally well settled that contracts, by which either party is given an option to buy or sell, at a future time, grain or other commodity, are gambling contracts, repugnant alike to good morals and public policy, and forbidden by the criminal statute under pain of fine or imprisonment.

It is conceded that the original contract between the parties

to this suit was of the latter character. In consideration of $25, paid by Webster to Sturges, Webster bought and Sturges sold an option or privilege to Webster to deliver to Sturges, within a fixed period of time, 25,000 bushels of corn, at 43⅜ cents per bushel. This contract was utterly void, illegal and criminal. It was a contract from which no rights could spring,· but whose baleful and poisonous influence must necessarily taint and corrupt every other contract into which it was allowed to enter as an ingredient. Undoubtedly the parties, after having made such illegal contract, were at liberty to enter into another contract in relation to the same subject-matter, precisely the same as though no former contract existed. But the new contract must be in no sense a continuation or modification of the old. The old contract must be utterly abandoned, so that neither its terms nor its consideration, nor any claim of right springing out of it, shall enter into the new.

It is a general rule of law, that if any part of the entire consideration for a promise, or any part of an entire promise, be illegal, whether by statute or common law, the whole contract is void: 1 Parsons Contr. 456. In Barton v. Port Jackson and Union Falls Plank Road Co. 17 Barb. 397, the court lay down the rule that every " new agreement entered into for the purpose of carrying into effect any of the unexecuted provisions of a previous illegal contract, is void." So in Armstrong v. Toler, 11 Wheat. 258, it is held, that where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it, and if the contract be in part only connected with the illegal consideration, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it.

The above instruction holds that the mere change of the illegal option contract into a regular contract of sale rendered it valid. It matters not how far the terms or consideration of the old contract may have been retained in the new, or to what extent Webster's claim for differences arising out of the old contract may have entered into the consideration of the new, the mere change of form seems to be all the instruction requires in order to render that which before was void and criminal, a valid

and legal transaction. It should be observed that the subject-matter of the option contract remained unchanged. The same price per bushel which was fixed by the option contract was retained in the contract of sale. Whether this was the fair market price for November corn on the day the contract was changed, or above or below the market price, the evidence fails to show with any degree of certainty.

The evidence, however, furnishes reasonable grounds for the conclusion that the price agreed upon in the contract of sale was merely an adoption of the price previously agreed upon in the option contract, and that so far as the price was concerned, one contract was merely a continuation of the other. It appears that in the interval between the making of the two contracts, the market price of corn had fallen, yet the price originally adopted was retained. The evidence fails to show that when the contract was changed there was any negotiation as to the price under the new arrangement, but rather the contrary. Sturges testifies that on the day the option contract expired, the market had gone against him to some extent; Webster, meeting him, proposed to change the option into a sale. No change in the commodity to be delivered or the price to be paid was suggested, the only change proposed being the surrender by Webster of his privilege to deliver the corn that day, and the acceptance in its stead of a contract for its delivery at any time during the month he might choose.

But there are further facts disclosed by the evidence, from which a strong inference may be drawn that Webster's claim against Sturges for differences under the option contract, entered into and formed a part of the consideration of the contract of sale. Sturges, after stating that on the last day of October he sold Webster the option or "put," as he calls it, testifies that on the next day, the day on which the contract was changed, Webster "put" the corn at 43⅝ cents, and he received it. By this he doubtless means to say, that on the day on which the option expired, Webster elected to deliver the corn, and he consented to receive it. But there is no pretense that the corn was actually delivered, or that any differences were paid. Sturges, in explaining the manner in which the corn was

" put " and received, shows that the modification of the contract was all that was in fact done. The inference is well nigh conclusive that Webster was paid the difference in his favor on the option contract by the acceptance of his proffer of a time contract of sale at the same price. In the estimation of the parties the latter became an equivalent for the former, and thus the results of the old illegal and void contract became incorporated into and formed a part of the consideration of the contract of sale.

It follows necessarily from what we have said, that the above instruction was erroneous, for which error the judgment must be reversed and the cause remanded.

Judgment reversed.