Morris v. Litchfield et al.

## Nelson Morris

### v.

## Lawrence Litchfield et al.

1. Contract—To whom payment to be made.—If a party to a contract promise payment without saying to whom, it will be understood that he promised payment to him from whom the consideration moved.

2. Partnership, test of.—The contract in this case did not create a partnership between the parties to it. The essential test of a co-partnership, a sharing in the profit and loss, is wanting.

Appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding. Opinion filed December 21, 1883.

This action was brought by Litchfield & Eaton, of Boston, Mass., against Nelson Morris, of Chicago, upon the common counts in assumpsit for goods sold and delivered, upon the common money counts and upon an account stated. On the

trial under the general issue, evidence was given on the part of the plaintiffs tending to show that they, soon after February 9, 1880, furnished at Portland, Maine, materials and machinery for fitting up certain steamships with a refrigerator for the purpose of carrying dressed beef. There was no evidence tending to show that the defendant had any property interest in the vessels or in the navigation or use of them, but it did tend to show that he was a dealer in cattle and dressed meats doing business at the Union Stock Yards in Cook county, Ills.

In order to maintain their action, the plaintiffs, after giving evidence tending to prove that Thomas Hoops had authority from the defendant for the purpose, introduced in evidence the following written contract, made February 9, 1880:

Agreement between The Dominion Line S. S. Co., The Beaver Line, and Nelson Morris, Esq., represented by Thomas Hoops, of Chicago, that the said steamship companies shall provide refrigerator space for the carriage of dressed beef or other perishable property, to the extent of not less that 300 tons on any one steamer, up to 500 tons on any one, and the said Nelson Morris agrees to pay for the entire space included in and occupied by the fittings provided for this purpose, one half the cost and maintenance of which shall be borne by the said Nelson Morris, it being understood that at the termination of the agreement the said fittings shall belong to the steamship companies, provided that in any renewal or revival of contract by which the business continues, no new charge for fittings is made.

Mr. Nelson Morris undertakes to load one steamship every week, during the present winter, from Portland, and not exceeding two each week during the season of St. Lawrence navigation, it being understood that the Grand Trunk Railway will deliver the property when and where required by the steamship.

The steamship companies pass one attendant both ways free, and the rate payable for the said space is to be £22 6s. sterling per ton of 40 cubic feet without primage; ice to be furnished by the shipper, and the surplus delivered in Liverpool to his agents, and the property loaded and discharged

under the supervision of his agent. The steamship companies are not in any way to be liable and are to be held clear of any payment for real or pretended patent rights. The portable engine required for this service will be joint property, and so treated at the termination of the agreement.

(Signed)

> Mississippi & Dominion S. S. Co. (limited).
> By Dan'l Torrance & Co., Agts.
> Canada Shipping Co. (limited).
> By Thomas Murray & Co. Agts.
> Thomas Hoops, for Nelson Morris.

Montreal, 9th Feb., 1880.

The court on behalf of the plaintiffs gave to the jury this instruction:

10th. "If the jury believe from the evidence that Thomas Hoops executed the contract of February 9, 1880, and that he was fully authorized so to do by the defendant, Morris, and if the jury believe from the evidence that the materials sued for were furnished for the purpose of fitting up steamships under the said contract, then the jury are instructed that the defendant is liable in this action for the fair value thereof, if such value has been shown by the evidence." To the giving this instruction, defendant duly excepted.

The jury having returned a verdict for plaintiffs for $1,702.06 damages, the court gave judgment, and the defendant brings the record here and assigns error.

Mr. John C. Richberg, for appellant.

Messrs. Frank J. Smith & F. A. Helmer, for appellees.

McAllister, P. J. The tenth instruction, and the last in the series given for the plaintiff below, directed the jury that, if they believed from the evidence that Hoops was authorized by the defendant, Morris, to execute the contract of February 9, 1880, and that he did execute it, and if they should further believe from the evidence that the materials sued for were furnished for the purpose of fitting up steam-

ships under the said contract, then they were instructed that the defendant was liable in this action for the fair value thereof, if such value had been shown by the evidence. It will be perceived that this instruction contains no hypothesis that the materials sued for were furnished at the request, or by the direction of any one; but only that they were furnished for the purpose of fitting up steamships under the said contract. The plaintiffs were in no respect parties to that contract. The contract referred to purports to be and is between certain steamship companies as parties of the one part, and defendant as party of the other part. The plaintiffs were not included; they were strangers to it. Besides, the defendant undertook therein to pay for only one half of the cost of the fittings. To whom should it be understood that he promised to make that payment? To the parties from whom the consideration for the promise moved. The rule is, that "if a party to a contract promised payment without saying to whom, it shall be understood that he promised payment to him from whom the consideration moved." Chit. on Cont., 6th Eng. (10th Am.) ed., 79.

It can not admit of doubt, that the consideration for defendants' promise of payment moved from the steamship companies, with whom plaintiffs were in no wise connected.

The contract did not create a partnership between the parties to it. The essential test of a copartnership—a sharing in profit and loss—is wanting. It is not pretended that the defendant had any interest in the steamships as co-owner or otherwise. By the contract, even the fittings, one half of the costs of which he promised to pay to the companies, were to belong to such companies. It is too plain to justify any argument that the contract in question was one between carriers by water and a proposed shipper of particular kinds of goods, to ship which safely, required some new appliances and fittings in the vessels. These, it is clear, were to be provided by the carriers, to whom they were to belong; and on account of them and certain terms stipulated as to the carriage of the goods, the shipper promised to pay such carriers one half the cost of such fittings.

To say that this constituted the steamship companies and the defendant copartners, so that such companies were the agents of defendant and could bind him to any person whom they might employ to furnish such fittings, is a sheer perversion of the intent and meaning of that contract.  As was well said by Lord Mansfield in Hoare v. Dawes, 1 Doug. 371: " It would be most dangerous if the credit of a person who engages for a fortieth part, for instance, should be considered as bound for all the thirty-nine parts."

Neither would the defendant be regarded as a joint contractor with the steamship companies, if they or either of the latter had ordered the material in question to be furnished. The principles recognized in Coope v. Eyre, 1 H. Bl. 37, are directly applicable to the above proposition.

The instruction was 'erroneous and for the giving of it the judgment for plaintiffs must be reversed and the cause remanded.

Judgment reversed.