GEORGE SCHNEIDER ET AL.

v.

VOLUNTINE C. TURNER.

*Gaming—Sec. 130, Criminal Code—Street Railway Stock—Option Contract—"Agree"—Consideration.*

1. An agreement to sell a certain number of shares of the capital stock of a street railway company at a stipulated price, if taken on or before a future date, is to be regarded as a contract giving an option to buy such shares of stock at a future time. It is, therefore, within the prohibition of Sec. 130 of the Criminal Code.

2. The instrument in question, in the case presented, can not be regarded merely as a proposition which could be accepted if not withdrawn within

Schneider v. Turner.

the time limited. The word "agree" imports a consideration, and it is not competent for the plaintiffs by averment and parol evidence, to show a want of consideration.

3. When such a contract is precisely within the letter and spirit of the statute it is void, without regard to the question of intent.

[Opinion filed September 6, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit brought by appellants against appellee to recover damages for the non-performance by the latter of an alleged contract for the sale of certain shares of the stock of the North Chicago City Railway Company. The declaration originally contained eight counts; but the plaintiffs having dismissed as to all but the fifth, seventh and eighth counts, those three alone are in question. The fifth count sets out *in hæc verba*, the following instrument in writing:

CHICAGO, November 11, 1885.

"In consideration of one dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and Ferd. W. Peck, seventeen hundred and eighty-six (1,786) shares of the capital stock of the North Chicago City Railway at six hundred dollars ($600) per share, if taken on or before the fifteenth day of December, 1885.

"V. C. TURNER."

Plaintiffs averred that thereafter, to wit, the 14th day of December, 1885, at, to wit, the county aforesaid, they tendered the said defendant the aggregate price of said 1,786 shares of capital stock mentioned in said writing, to wit, the sum of $1,071,600, and said plaintiffs then and there requested said defendant to sell and deliver to said plaintiffs the aforesaid shares of stock; yet the said defendant then and there refused to deliver said shares of stock to the plaintiffs and has since hitherto refused to deliver the same, whereby, etc.

The seventh count sets out *in hæc verba* the same instrument, also a subsequent parol agreement between the parties made November 21, 1885, modifying said written contract as respects the time and manner of payment of the price mentioned in the writing, but in no other respect, and avers that thereafter, to wit, on the 12th day of December, 1885, at said county, the plaintiffs notified said defendant of their acceptance of the aforesaid agreement, and that afterward, to wit, on the 14th day of December, 1885, the said defendant notified the said plaintiffs that he would refuse to receive said amount of the purchase price for said shares, although plaintiffs were ready and willing to pay, etc., and thereby waived any tender, etc.

The eighth count of said declaration was as follows:

"And whereas also, the said defendant afterward, to wit, on the 11th day of November, 1885, at the place aforesaid, made and delivered to said plaintiffs a certain other writing. in words and figures as follows, to wit:

"'CHICAGO, Nov. 11, 1885.

"'In consideration of one dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and Ferd. W. Peck, seventeen hundred and eighty-six (1,786) shares of the capital stock of the North Chicago City Railway, at six hundred dollars ($600) per share, if taken on or before the fifteenth day of December, 1885.

"'V. C. TURNER.'"

"And said plaintiffs aver that said written agreement was made and signed by said defendant without any good or valuable consideration; and that said defendant did not receive, nor did said plaintiffs pay, the one dollar or the other valuable considerations mentioned in said writing; and they further aver that said plaintiffs did afterward, to wit, on the 14th day of December, 1885, tender said defendant the aggregate price aforesaid of said 1,786 shares of stock, to wit, the sum of $1,071,600, and requested said defendant to deliver them the aforesaid shares of capital stock.

Schneider v. Turner.

" And they further aver that at the time of said offer on .the part of said defendant, and at the time of said tender on the part of said plaintiffs, said defendant was the owner of, or had the control of, and the right to contract for, the sale of said shares of stock.

"Plaintiffs further aver that said offer was made by defendant because it would probably require so much time to make examination into the condition, property and franchises of the North Chicago City Railway Company, and to ascertain the value of such property; and the time for the performance of said contract and its acceptance was not so fixed for the purpose of speculating upon the rise and fall in the value of said stock, and that there was no intention on the part of said plaintiffs, and there was no agreement or understanding between plaintiffs and defendant at that time and thereafter, that said contract should be performed by the settlement or adjustment of the difference in value between the contract price and the market price, if there should be any, of such stocks at the time fixed for such acceptance and performance. Yet the said defendant then and there refused to deliver said shares of stock to the plaintiffs, and has since hitherto refused to deliver the same, whereby plaintiffs have been deprived of divers great gains and profits which would have accrued to them from the delivery of the said shares of stock."

The defendant demurred to each of said counts, and the demurrer was sustained to each, and, the plaintiffs electing to abide by their declaration, the court gave final judgment against them, from which they prosecute this appeal.

Messrs. Smith & Pence, for appellants.

A contract which does not involve in its performance the settlement thereof by an adjustment and payment of the differences between the contract price and the market value at the time of the supposed performance, is not a gambling contract *per se*, or under the statutes of this State, because it is not affected by the vice of a gaming intention. Pickering v. Cease, 79 Ill. 328; Tenney v. Foote, 4 Ill. App. 594; Same v. Same, 95 Ill. 99; Pearce v. Foote, 113 Ill. 228; Webster v·

Sturgess, 7 Ill. App. 560; McCormick v. Nichols, 19 Ill. App. 334; Beveridge v. Hewitt, 8 Ill. App. 467; Coffman v. Young, 20 Ill. App. 76; Bigelow v. Benedict, 70 N. Y. 202; Mortimer v. McCallan, 6 M. & W. 58; Thacker v. Hardy, L. Q. R. (4 B. Div.) 685; Kent v. Mittenberger, 13 Mo. App. 507; Whitesides v. Hunt, 97 Ind. 191.

The court will never construe a statute according to the letter, which is manifestly unjust in its operation, if it can be avoided.

This contract was made in the utmost good faith between business men in a legitimate business, without any suspicion that they were engaging in a gambling transaction, or doing anything against the morals or peace of the community.

It is clear that this court and the Supreme Court deem it necessary that such contract should of itself involve the element of gambling before the statute can be invoked; and to constitute such a gambling element an agreement or understanding must be had between the parties to the effect that stock should not be delivered, but the difference only between the contract price and the market values at times of performance should be adjusted and paid.

The construction given by this court and the Supreme Court to Sec. 130 of the Criminal Code necessarily requires an interpretation to be given to the word "option" different somewhat from the common definition of that word. In other words, it requires an ascertainment of the meaning of that word as used in the commercial world, on the stock exchange and board of trade.

This statute was passed for the purpose of meeting certain evils which had grown up on the stock exchange, and especially on the board of trade in Chicago, and the language used in the statute was in conformity with its accepted meaning on the board of trade. Tenney v. Foote, 4 Ill. App. 598.

In other words, the language of the statute contains the idea that the transaction against which it is leveled must involve the element of gambling, as generally understood. That is, it must be a bet upon an uncertain event and not a mere sale and transfer of stock.

Schneider v. Turner.

The definition of gambling as given by the Supreme Court in Merchants S. L. & T. Co. v. Goodrich, 75 Ill. 554, is the following: "A wager is a contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening of an uncertain event."

The contract in question does not involve any such element. If it related to real estate, no one would pretend that it involved the idea of a bet.

The evils sought to be remedied are the betting upon the price of commodities enumerated by an agreement to settle and adjust the difference without delivery of the commodities. When the commodity is to be delivered then it becomes a legitimate mercantile transaction.

The intention of the legislature was to provide punishment for crime. It is not to be presumed that it had any desire to punish innocent parties or to prohibit commercial transactions which were not *per se* against public policy. There were classes of commercial transactions well known in the community which were, in effect, nothing but gambling. The general assembly were legislating upon the question of gambling, and undoubtedly desired to cover by some appropriate provisions such gambling commercial transactions, and hence section 130 was passed. If that section means what counsel for appellees will contend, then the legislature did an absurd thing and passed a statute which "would lead to an absurd consequence," which would prohibit innocent *bona fide* commercial transactions, and which in no wise would interfere with that class of commercial transactions which this court and the Supreme Court have held to be gambling transactions and which fall within the meaning of this statute.

The contract of November 11, 1885, was without consideration, and, unless accepted, was a mere offer which might have been withdrawn at any time before acceptance, but when accepted on December 14, 1885, it became a binding contract, a promise for a promise, and the performance of it was fixed to be made on or before December 15, 1885.

In the amended eighth count, it is alleged that said sup-

posed contract was signed and accepted without any good or valuable consideration, and that plaintiff did not receive the dollar or the other valuable considerations mentioned in the instrument. The demurrer admits this. If there was no consideration, then the instrument was a mere offer not binding on the proposer until such offer was accepted, and when accepted it was a promise for a promise.

The plaintiff made tender of the contract price within the time fixed by the offer, and defendant refused to perform. Thus the transaction, both in form and substance, was a *bona fide* transaction without any element of a gambling option, or of an option such as is described in Sec. 130 of the Criminal Code.

Though one dollar and other valuable considerations are acknowledged as having been received by Turner, yet it is clear law that a receipt can always be explained or disputed, or shown to be merely colorable. 2 Chitty on Contracts (11 Am. Ed.) 1118; Bishop on Contracts, Sec. 75; 2 Wharton on Ev. Secs. 1042, 1039, 1064, 1077, 1083; 1 Greenleaf on Ev. Sec. 305; Furbush v. Goodwin, 25 N. H. 425; Huebsch v. Scheel, 81 Ill. 281; Honeyman v. Jarvis, 64 Ill. 366; Bowes v. Foster, 2 Hurl. & N. 779.

Messrs. GOUDY, GREEN & GOUDY, for appellee.

It might be admitted, for the sake of argument, that the main object of the legislature was to prevent the dealing in privileges to buy or sell, which were usually settled by the payment of differences. The question before the legislature was to make a law which would effectually break up the pernicious practice. It was well known that all manner of practices and forms were resorted to in order to evade the common law rule that such contracts were void. Therefore the legislature deemed it expedient to go to the root of the matter, and to make every contract giving the privilege to buy or sell at a future time, void. If the contract on its face came within the terms of the statute, it was bad and beyond cure; if it was valid on its face, but did not express the true contract, such real contract could be proved outside of the apparently good

contract. The language is broad and free from ambiguity, thus excluding any ground for construction.

A contract for the sale of grain or of stock, to be delivered in the future at a time to be fixed by either buyer or seller, was always valid, and was not affected by section 130; but a contract giving the privilege to make a contract for sale in the future was a different thing, and one prohibited by the statute. It is not a logical or proper conclusion to say that a contract expressly within the language of the statute is good for the want of the element which avoided such contracts. The parties can not accomplish that result, neither can the legislature. The object of this statute clearly was to take away every pretext for transactions which had become a public evil.

The court "must seek for the intention in the words of the act itself." The act says that all contracts whereby one person contracts to have or give to himself or another the option to sell or buy at a future time, etc., shall be void. The act is expressed in clear and precise terms. All such options are prohibited. The court is "not at liberty to suppose that the legislature intended anything different from what their language implies." Commonwealth v. Kimball, 24 Pick. 366.

The statute makes all pure options void, and the court can not inject into the statute a limitation not found therein. Therefore it follows that the contract sued on, which is admittedly an option contract, is void, and, being void, can not be made valid by extrinsic evidence.

We insist that, even if the plaintiffs were at liberty to deny the consideration mentioned in the instrument, and thus change its legal import, yet they would have no cause of action. In that case, the instrument being without consideration, would be *nudum pactum*, and unenforceable. To make a valid contract both parties must be bound. In the case supposed, Turner alone would be bound. Clearly, if there was no consideration, he was not bound when he signed the instrument. The count alleges that afterward plaintiffs tendered the price and requested a delivery of the stock, but Turner then and there refused to perform.

This case is like the celebrated case of Cooke v. Oxley, 3 T.

R. 653. The declaration alleged that the defendant pro-
posed to the plaintiff that the former should sell and deliver
to the latter 266 hogsheads of tobacco, whereupon the plaint-
iff desired the defendant to give him (plaintiff) time to agree
to or dissent from the proposal until the hour of four of the
afternoon of that day, to which the defendant agreed; and
thereupon the defendant proposed to the plaintiff to sell and
deliver the same to the plaintiff upon the terms aforesaid, if
the plaintiff would agree to purchase them upon the terms
aforesaid, and would give notice thereof to the defendant
before the hour of four of the afternoon of that day. The
plaintiff averred that he had agreed to purchase the same upon
the terms aforesaid, and did give notice thereof to the defend-
ant before the hour of four in the afternoon of that day. He
also averred that he requested defendant to deliver to him the
said hogsheads, and offered to pay to the defendant the price
for the same, yet the defendant refused.

A motion in arrest of judgment was sustained on the
ground that there was no consideration for the defendant's
promise.

In Routledge v. Grant, 4 Bing. 651, the same doctrine is
laid down on the authority of Cooke v. Oxley. The case of
Adams v. Lindsell, 1 B. & A. 681, which is sometimes said to
break in upon the authority of Cooke v. Oxley, is referred to,
and the distinction pointed out that in that case the contract
was made by post.

In Faulkner v. Hebard, 26 Vt. 452, it was held that a con-
tract for the sale of property, which is merely what is termed
a refusal of the property by one of the parties, leaving it op-
tional with the other party whether he will take the property
within a certain time or not, unless upon some other consider-
ation or under seal, would not be valid in law for want of a con-
sideration, Redfield, Ch. J., delivering the opinion of the
court. See, also, Eskridge v. Glover, 5 Stew. & Porter, 264;
Stitt v. Huidekoper, 17 Wall. 384; Johnson v. Filkington, 39
Wis. 62; Smith v. Weaver, 90 Ill. 392.

Where an instrument recites a consideration it can not be
shown by extrinsic evidence that there was, in fact, no consid-

eration, for the purpose of annulling the instrument or chang-
ing its legal import. Stackpole v. Arnold, 11 Mass. 27; Miller
v. Edgerton, 15 Pac. Rep. 894; Goodspeed v. Fuller, 46 Me.
141; Grout v. Townsend, 2 Den. 336; Belden v. Seymour,
8 Conn. 304; Jones v. Buffum, 50 Ill. 277; Arthur v. Arthur,
28 N. Y. 24; Stackpole v. Robbins, 47 Barb. 212.

McALLISTER, J. The ground upon which the insufficiency
of the declaration was predicated was, that the instrument set
out in the respective counts thereof, was an agreement, a con-
tract, and that it was, upon its face, a contract to give the plaint-
iffs the option to buy, at a future time, the shares of stock
therein mentioned; and that therefore it came directly within
the prohibition of Sec. 130 of the Criminal Code, which reads as
follows: "Whoever contracts to have or give to himself or
another the option to sell or buy at a future time any grain or
other commodity, stock of any railroad or other company, or
gold, or forestalls the market by spreading false rumors to
influence the price of commodities therein, or corners the
market, or attempts to do so, in relation to any of such com-
modities, shall be fined not less than $10, nor more than $1,000,
or confined in the county jail not exceeding one year, or both;
*and all contracts made in violation of this section, shall be
considered gambling contracts and shall be void.*"

The counsel for appellants earnestly insist that the eighth
count of plaintiffs' declaration is good notwithstanding said
statute; because, they say, in view of the averments in that
count, which are to be taken as admitted by the demurrer,
there was no contract, for the want of a consideration; and
hence the instrument set out is to be regarded as a mere prop-
osition, which would not be within the statute, and not having
been withdrawn, would, if accepted within the time specified,
become a contract from the time of acceptance and be valid.
They further claim that, at all events, the averments to the
effect that there was no intention to settle upon differences,
saved the transaction from the denunciation of the statute.

A demurrer admits only such facts as are well pleaded.
Whether those matters were well pleaded, and whether the
case falls within said section of the Criminal Code, must, as it

seems to us, depend upon the decision of the question whether the instrument set out is to be regarded as an agreement, a contract, or a mere proposition for a sale. If it did not amount to a contract, but was a mere proposition for one, then it was clearly not within said statute; for, to be within it, there must have been a contract to give to the defendant or to the plaintiffs the option to sell or buy at a future time the shares of stock mentioned. The question is not entirely free from difficulty, but we are inclined to the opinion that such instrument is to be regarded and taken as a contract giving to the plaintiffs the option to buy the shares of stock in question at a future time. It says: "In consideration of one dollar and other valuable considerations, receipt of which is hereby acknowledged, *I hereby agree* to sell to George Schneider, etc., seventeen hundred and eighty-six shares of, etc., at $600 per share, if taken on or before the fifteenth day of December, 1885;" and duly signed by the defendant.

In each count it was alleged that this instrument was made by the defendant and delivered to the plaintiffs, and we are unable to perceive that, as regards that instrument, anything is wanting to constitute an agreement, a contract. It expressly recites a consideration. It does not expressly appear that such consideration moved from the plaintiffs; but it will be understood and is implied in this, as in other cases, that it moved from the parties to whom the promise was made, as in the case of the promise itself. And there the rule is, that if a party to a contract promised payment, without saying to whom, it shall be understood that he promised payment to him from whom the consideration moved. Morris v. Litchfield, 14 Ill. App. 83.

In Andrews v. Pontue, 24 Wend. 289, the court said: "The contract will then be, 'I do hereby agree and bind myself to pay to Samuel Andrews the sum of one hundred dollars, whenever, and as soon as Sheriff street shall be opened.' Words like these standing alone, were, in Easter term, 1839, held by the Queen's Bench, in England, to import a consideration, and were received as sufficient to sustain an action upon an account stated. Davies v. Wilkinson, 1 Jurist, Am. Ed. by

Halst. & Voorh. 372. The words were, 'I agree to pay C. D. 695 pounds,' (mentioning time and place for all except ninety-five pounds,) and adding, 'the remaining ninety-five pounds to go as a set-off, etc., on a certain debt.' The court pronounced this to be an *agreement*, not a promissory note; and held that the word *agree*, of itself imported a consideration. Lord Denman, Ch. J., said: 'I think the promise in this case conveyed by the words, "I agree to pay," imports a consideration, without doing any violence to the language.' And the three other learned judges, Littledale, Patterson and Coleridge, expressly concurred in the remark." In Ives v. Hazard, 4 R. I. 27, the court says: "The counsel for the respondent contend that the words of the memorandum import an offer to sell and nothing more. We think the language imports an agreement to sell. The language is, 'I agree to sell ;' the consideration is expressed, and the time when possession is to be given is fixed by the memorandum."

So, in the case in hand, the words import an agreement to give to the plaintiffs the choice, privilege, or option to buy in the future the shares mentioned in the memorandum, and fixes the time within which such option was to be exercised. The word, 'agree,' was, as to its legal meaning, defined in Spaulding v. Hallenbeck, 30 Barb. 299. The court said: "Agrees, *ex vi termini*, means that it is the agreement of both parties, both *concurring* on the point, whether both sign or not." That definition is in consonance with that given in the leading case of Wain v. Walters, 5 East, 10; Barton v. McLean, 5 Hill, 256.

Regarding the instrument as a contract in writing, as we are inclined to think we should, then, by the rules of law established by the cases cited by appellee, it was not competent for plaintiffs by averment and oral proof, to alter or change the character and legal effect of that contract on the ground of want of consideration, or to transmute it into a mere offer or proposal. And it being, on its face, a contract precisely within the letter and spirit of the statute in question, it must suffer annihilation therefrom, without regard to the question with what intent the contract was made. It is a universal princi-

ple, that a man shall be taken to intend that which he does. Starkie on Ev., Part 4, p. 739. That was the principle which was applied in Webster v. Sturges, 7 Ill. App. 560, a case directly in point; People v. Brooks, 1 Den. 457; Smith v. Brown, 1 Wend. 231. The rule appears to be, that in acts *mala in se,* the intent governs, but in those *mala prohibita,* the only inquiry is, has the law been violated? Morris v. The People, 3 Den. 402, 403. In Gilbert v. Bone, 64 Ill. 524, the court said: "It is undoubtedly the general rule, that individuals charged with disobedience to penal laws can not exonerate themselves on the ground of good faith or error of judgment; and it has been held that no excuse of this kind will avail against the peremptory words of a statute imposing a penalty. If the prohibited act has been done, the penalty must be paid. Calcraft v. Gibbs, 3 T. R. 19; Caswell v. Allen, 7 Johns. 63; Morris v. The People, 3 Den. 381, 402." It follows from the principles above announced, that the averments in the eighth count of the declaration, respecting the purpose and intention of the parties in making the contract, were immaterial, because none of the matters averred would be admissible in evidence to show that the statute had not been violated, or to relieve from the consequences of such violation. The case is an interesting and important one. We have given it all the consideration practicable, under our circumstances, as regards the business of this court. We may be radically wrong in our views, but have the consolation of knowing that our decision may be reviewed by a higher tribunal where such errors as we may have fallen into can be corrected. The judgment will be affirmed.

*Judgment affirmed.*