### Harry Woods v. Mark Bates.

#### Gen. No. 12,538.

1. OPTION CONTRACT—*instrument with respect to purchase and sale of grain so held.* The following instrument held an option contract within the meaning of section 113 of the Criminal Code:

"I, Harry Woods, hereby offer to contract for the sale to Mark Bates of 60,000 bushels of regular contract wheat on the Board of Trade of the city of Chicago, at 82⅝ cents per bushel, same to delivered in the month of December, 1905.

HARRY WOODS.

"In consideration of $60.00 I promise to leave the above offer open for acceptance until the hour of one o'clock and fifteen minutes P. M. September 14, 1905.

HARRY WOODS."

2. DECLARATION—*what averment of, improper.* Where a contract declared upon is void by statute, it is not competent by averment contained in the declaration to undertake to change its legal effect.

Action of assumpsit. Error to the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed April 19, 1906.

JAMES E. MONROE, for plaintiff in error.

D. MONCRIEFFE KIRTON, for defendant in error.

MR. JUSTICE BALL delivered the opinion of the court.

Bates sued Woods in assumpsit. The declaration as amended alleged that both plaintiff and defendant were members of the Board of Trade of the city of Chicago, and as such were and still are engaged in making contracts for the purchase and sale of grain for future delivery; that

September 13, 1905, the defendant made a certain offer and promise to the plaintiff, to wit:

"CHICAGO, Sept. 13, 1905.

I, Harry Woods, hereby offer to contract for the sale to Mark Bates of 60,000 bushels of regular contract wheat on the Board of Trade of the City of Chicago, at 82⅞ cents per bushel, same to be delivered in the month of December, 1905.

HARRY WOODS.

In consideration of $60.00 I promise to leave the above offer open for acceptance until the hour of one o'clock and fifteen minutes P. M. September 14, 1905.

HARRY WOODS."

"And the plaintiff avers that the said offer of said defendant was then and there a *bona fide* offer to make a *bona fide* contract for the actual sale to plaintiff by the defendant of sixty thousand bushels of contract wheat on the said Board of Trade of the city of Chicago, for actual delivery in the month of December, A. D. 1905, and that it was then and there the intention of both the plaintiff and the defendant that said wheat was to be in fact delivered by the defendant to the plaintiff and paid for by the plaintiff to the defendant at 82⅞ cents per bushel when so delivered in fulfillment of said proposed contract.

And the plaintiff further avers that on, to wit: the 14th day of September, A. D. 1905, at the hour of 1:14 P. M., and while said offer was still open, the plaintiff then and there accepted said offer of said defendant, and the plaintiff then and there duly notified the defendant of said acceptance of said offer, and then and there requested the defendant to make the said contract as specified in said offer of said defendant; but the said defendant then and there wholly failed and refused to make said contract with the plaintiff, and then and there wholly refused to abide by said offer, and wholly repudiated the same.

And the plaintiff further avers at the time of the acceptance of said offer by the plaintiff and at the time of the notice of said acceptance thereof by the plaintiff to the defendant, and at the time said defendant refused to abide

by said offer and make said contract as aforesaid, at, to wit: the hour of one o'clock and fourteen minutes P. M. September 14, 1905, the market price of contract wheat for delivery in the month of December, A. D. 1905, in the open market on said Board of Trade of the city of Chicago was the sum of 85¼ cents per bushel.

And the plaintiff further avers that by reason of the refusal of the said defendant to abide by his said offer and the refusal of the defendant to make said contract so offered to be made as aforesaid, the said plaintiff was compelled and required to and did then and there on said Board of Trade in the open market contract for the sale to the plaintiff of sixty thousand bushels of said regular contract wheat for actual delivery in the month of December, A. D. 1905, at the then market price thereof on said Board of Trade, to wit: at the price of 85¼ cents per bushel.

By reason of which said several premises the said defendant, Harry Woods, thereby then and there became and still is indebted to the plaintiff in the sum of, to wit: fifteen hundred dollars, and being so indebted the defendant then and there promised," etc., etc.

To this declaration the defendant filed a general demurrer, which the court overruled, and the defendant standing by his demurrer, judgment was entered against him and in favor of the plaintiff in the sum of $1,425 and costs. This writ of error was then sued out.

The errors assigned are, the overruling of said demurrer, and the entering of judgment against plaintiff in error.

There is but one question in this case, and that is, did or did not the writing set out in the declaration give to the defendant in error the option to buy, at a future time, the wheat mentioned therein?

This writing states a valid contract (Hayes v. O'Brien, 149 Ill. 403, 411), unless it falls within the prohibition of section 130 of the Criminal Code, which reads as follows:

" Whoever contracts to have or give to himself or another the option to sell or buy, at any future time, any grain, or other commodity, stock of any railroad or other company,

Woods v. Bates.

or gold, or forestalls the market by spreading false rumors to influence the price of commodities thereon, or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

It is the duty of courts to enforce contracts as the parties made them. In ascertaining what they meant to bind themselves to do or not to do, the court will place itself in the position of the parties at the time the contract was entered into, look into the subject-matter with reference to which they were contracting, and then ascertain from the words used and their connection what they intended to accomplish.

The parties to this writing were and are members of the Board of Trade of Chicago, and as such were and are engaged in the purchase and sale of grain for future delivery. Each of them knew that under the law he had no right "to have or give to himself or another the option to sell or buy, at a future time, any grain," etc. It is evident that appellee thought that said writing escaped the statute, because, as he says: "The promise here is not an agreement to deliver the property at the option of the promisee, but a promise supported by a consideration to leave the offer, to make a legal contract, open for a specified time."

The paper sued upon consists of two parts. The first part is an offer by Woods to contract for the sale to Bates of 60,000 bushels of wheat at eighty-two and seven eighth cents per bushel to be delivered in the month of December, 1905. The second part is a contract by which for the consideration of $60 Woods promises to leave the above offer open for acceptance until the hour of one o'clock and fifteen minutes P. M. September 14, 1905.

We are unable to see that the contract part of this paper is not an optional contract, by which Woods contracted to give Bates the option to buy 60,000 bushels of wheat at a

future time, and hence is within the prohibition of said section 130.

An option is a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price, within a time certain. Ide v. Leiser, 10 Mont. 5.

The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, is what is termed in law an option, which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time. Black v. Maddox, 104 Ga. 157.

In Schneider v. Turner, 27 Ill. App. 220, S. C. 130 Ill. 28, the writing sued upon reads: "Chicago, Nov. 11, 1885. In consideration of $1 and other valuable considerations, the receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and Ferd W. Peck 1,786 shares of the capital stock of the North Chicago City Railway at $600 per share, if taken on or before the 15th day of December, 1885.          V. C. TURNER."

The Appellate Court, by McAllister, Judge, held that this instrument was to be regarded and taken as a contract giving to the plaintiffs the option to buy the shares of stock in question at a future time, and therefore within the prohibition of said section 130 of the Criminal Code; and on appeal the Supreme Court affirmed the judgment of the Appellate Court. Schneider v. Turner, 130 Ill. 28.

In Tenney v. Foote, 95 Ill. 99, Judge McAllister, then on the trial bench, wrote an opinion in the case which was adopted by the Appellate Court (4 Ill. App. 594), and concerning which the Supreme Court say: "We see no objection to the law as announced in the opinion adopted by the Appellate Court, and written by the Circuit Judge, who was formerly a distinguished member of this court." In that opinion Judge McAllister says: "So that the word 'option' as used in the statute here, taken with the context, means a mere choice, right or privilege of selling

Woods v. Bates.

or buying; and it is the contracting for such choice, right or privilege of selling or buying at a future time any commodity the statute was intended to prohibit, as contradistinguished from an actual sale or purchase, with the intention of delivering and accepting the commodity specified."

The object the legislature had in view in the enacting of said section 130 was to prevent the making of certain classes of contracts which had become public evils. It made contracts unlawful which before its passage were lawful. Its language is plain. It renders unlawful and void all dealing in privileges to sell or buy, at a future time, any grain or other commodity. It is common knowledge, and we may take notice of that which is thus known, that parties desirous of dealing in options will resort to every possible form to evade the statute. The statute was passed to re-press a widely extended and growing evil, namely, the practice of gambling on the market prices of grains and other commodities, and therefore no mere change in form will make that legal which in truth and in fact is within the inhibition of the statute. For us to hold otherwise would be judicial legislation.

In Booth v. The People, 186 Ill. 43, the court say : "The evidence explained the writing set out in the indictment to constitute an agreement giving defendant the option to buy 10,000 bushels of corn at $31\frac{1}{2}$ cents per bushel from Weare Commission Company, at any time within ten days after the 16th day of August, 1899." The defendant admitted that the contract as thus interpreted was within the statute, but assailed the constitutional validity of section 130. In this contest he was defeated by the Supreme Court of the State, *supra*, and by the Supreme Court of the United States. Booth v. Illinois, 184 U. S. 425.

The Supreme Court of this State in the Booth case, in discussing the object to be accomplished by the enactment of section 130, say : " Clearly a contract which gives to one of the contracting parties a mere privilege to buy corn, but does not bind him to accept and pay for it, is wanting in the elements of good faith to be found in a contract of

purchase and sale where both parties are bound, and offers a more convenient cover and disguise for mere wagers on the price of grain than contracts which create the relation of vendor and vendee."

A call is an offer to sell property for some stated delivery, which, in consideration of a certain amount of money paid, is left open a certain length of time.

A put is an offer to buy property, left open a certain length of time for the acceptance of the other party, in consideration of a stated amount of money.

Viewed in the light of the foregoing authorities, we are of the opinion that the writing in question contains every element of a contract for an option to buy the commodity at a future time, which is prohibited by said section 130.

The amended declaration contains the allegation that it was the intention of both the plaintiff and the defendant that said wheat was in fact to be delivered by the defendant to the plaintiff and paid for by the plaintiff to the defendant at eighty-two and seven-eighth cents per bushel when so delivered in fulfillment of said proposed contract. That contract being within the statute, it was not competent for the plaintiff by averment and oral proof to change its character and legal effect. Schneider v. Turner, 27 Ill. App. 220.

The judgment of the Superior Court is reversed.

*Reversed.*